BARRIE CLOUGH *vs.* RICHARD L. BROWN.[1]

No. 01-P-1849.

Middlesex. May 15, 2003. - September 25, 2003.

Present: GELINAS, KASS, & TRAINOR, JJ.

*Insurance,* Life insurance, Broker, Agent. *Limitations, Statute of. Contract,* Insurance agency. *Negligence,* Insurance agent.

In a civil action arising from the sale of a universal life insurance policy to the plaintiff, a Superior Court judge erred in granting summary judgment in favor of the defendant, an insurance agent, and in dismissing the action on the ground that the discovery rule did not toll the expired statute of limitations, where several questions for the trier of fact existed as to when the plaintiff learned, or should have learned, that he had been injured by the defendant's conduct, including whether the defendant made misrepresentations concerning the policy that were "inherently unknowable" to the plaintiff, and whether the defendant breached any duty of disclosure arising from his role as a broker to the plaintiff in the transaction. [407-409]

CIVIL ACTION commenced in the Superior Court Department on March 13, 2000.

The case was heard by *Elizabeth M. Fahey,* J., on a motion for summary judgment.

*Mark F. Itzkowitz* for the plaintiff.

*Robert Snider* for the defendant.

TRAINOR, J. Barrie Clough appeals from an order granting the defendant, Richard L. Brown's, motion for summary judgment and from the judgment dismissing Clough's claims for breach of contract, negligence, intentional misrepresentation, fraud, and violation of G. L. c. 93A, against Brown, arising from Brown's sale of a universal life insurance policy to Clough in 1986. A Superior Court judge found that Clough's suit, filed in 2000, was untimely and rejected Clough's argument that the statute of limitations had been tolled under the discovery rule. We

---

[1]Doing business as Richard Brown Associates.

conclude that summary judgment should not have been granted, as there are questions of material fact as to when Clough learned, or should have learned, that he had not (as he believed) purchased a $200,000 policy. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974); *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991); *Highlands Ins. Co.* v. *Aerovox, Inc.*, 424 Mass. 226, 232 (1997). We reverse the order allowing the motion for summary judgment and the judgment and remand the case for further proceedings.

In 1986, Clough met with Brown, an insurance agent, to discuss retirement planning. Clough, then forty-two, had several life insurance policies with a total cash value of about $12,000. Although Clough was not initially interested in life insurance, Brown gave him a proposal for the purchase of a $200,000 death benefits policy that would be "completely paid up at age sixty-two," with an initial investment of $12,900 and annual premiums of $900. According to Clough, when he told Brown that he could not afford the $900 annual premiums, Brown asked him, "[H]ow about if I can show you how to do this for nothing with your present policies." Brown then suggested that Clough could obtain the $200,000 policy, paid up by age sixty-two, by cashing out his existing policies and depositing the money into a mutual fund, from which would be drawn annual premiums of $600 for twenty years. According to Clough, Brown told him that the lower premium of $600 (as opposed to $900) would affect only the cash value of the policy, which would fluctuate, but not the death benefit itself. Clough said that he did not care about the cash value of the policy; he just wanted the $200,000 death benefit for his family. Clough then cashed in his existing policies, used $7,000 for the initial payment on a policy issued by Midland National Life Insurance Company (Midland) on June 24, 1986, and placed the remaining $5,000 in a mutual fund. Payments of $600 were made annually from this mutual fund. Clough received a copy of the policy and a brochure entitled "Universal Life: Questions & Answers." He then received annual reports on the policy from Midland from 1986 to 1997. Each annual statement, from 1986 to 1996, indicated a death benefit in excess of $200,000.

In 1997, Clough had a conversation with a friend about

financial planning for his children. After the friend suggested that Clough check with his insurer concerning his policy, Clough contacted Midland. He was advised, first in a telephone conversation, then in a letter from Midland consumer affairs associate Cheryl Ziegler, that the $600 annual premiums he had been paying were insufficient to obtain the "paid up" $200,000 policy by age sixty-two. By letter from his attorney dated March 13, 1998, Clough presented Brown with a demand for relief under G. L. c. 93A. On March 13, 2000, Clough filed a complaint containing claims against Brown for breach of contract, negligence, intentional misrepresentation, fraud, and violation of G. L. c. 93A. He sought a jury trial.

On June 26, 2001, Brown filed a motion for summary judgment, arguing that the statute of limitations had run on Clough's claims and that no contract existed between Clough and Brown regarding the policy. The motion judge agreed with Brown on both arguments and allowed summary judgment for Brown, dismissing Clough's complaint on October 17, 2001.

*Discussion.* The discovery rule operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured by the defendant's conduct. See *Taygeta Corp.* v. *Varian Assocs., Inc.*, 436 Mass. 217, 229 (2002). The rule "may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 370-371 (2002), quoting from *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 (2001). "[A] cause of action for the redress of an 'inherently unknowable' wrong does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the factual basis for a cause of action." *Patsos, supra* at 329. "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.' " *Ibid.*, quoting from *Riley* v. *Presnell*, 409 Mass. 239, 247 (1991).

Clough argued below, as here on appeal, that by operation of

the discovery rule, the various statutes of limitations on his claims were tolled until April of 1997, when he first discovered that he had not received the benefit of the bargain he believed he had reached with Brown. Clough argued that the facts giving rise to his claims were "inherently unknowable" from the materials included in the record and the representations made by Brown, upon whom Clough was entitled to rely. These arguments were rejected by the trial judge, who concluded that Clough had failed to "set forth facts from which a jury could find that he did not know and could not have known that he did not get a $200,000 death benefit insurance policy that would be paid up at age 62 until 1997, despite the brochures, the proposal, the illustrations, and the annual statements." The judge continued: "Clough has simply alleged ignorance. Here, *Clough could have sought explanations at any time regarding his annual statements* as easily as he sought information from Midland in 1997" (emphasis supplied). The judge further concluded that the relationship between Brown and Clough did not give rise to any duty of disclosure on Brown's part. Therefore, she concluded, the discovery rule did not apply, and Clough's complaint was untimely. We do not agree.

Clough acknowledges that he did not seek an explanation regarding the fluctuations reflected in his annual statements from Midland. His argument is that prior to 1997, he had no reason to seek an explanation regarding his statements or the policy, due to misrepresentations by Brown in 1986 that the policy's death benefits, unlike its cash value, would not fluctuate. Whether, based on the other information Clough received at that time and in subsequent years, he should have pursued an explanation, and thus learned that he had a cause of action against Brown, is a question for a jury. "[T]he triggering event cannot be pinpointed as a matter of law, but poses a question of fact as to when a reasonable policy holder should have realized from the available information that the policy was not performing as allegedly promised . . . ." *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. at 370. As the parties assert "different events as triggering accrual, the factual inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that the defendant's conduct had caused him

injury." *Id.* at 371. See *Patsos* v. *First Albany Corp.*, 433 Mass. at 329. In this context, "notice" does not mean discovery of every fact necessary for Clough to prevail on his claim, but rather discovery of his injury as causally connected to any tortious conduct by Brown. See *Szymanski* v. *Boston Mut. Life Ins. Co.*, *supra* at 371.

In sum, there exist several questions for the trier of fact, including whether Brown made misrepresentations concerning Clough's policy that were "inherently unknowable" to Clough, and whether Brown breached any duty of disclosure arising from his role as a broker to Clough in the transaction. Contrary to the trial judge's conclusion, the fact that Clough ultimately purchased only one policy from Brown is not dispositive of the question whether Brown had a fiduciary relationship to Clough. While "the relationship between an insurance broker and the insured is not normally thought to be fiduciary in nature, . . . special circumstances of assertion, representation and reliance" may give rise to such a relationship. *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. 29, 31-32 (1997). Whether any of these circumstances arose in this case is, of course, a question for the jury.

The judgment dismissing Clough's complaint and the order allowing Brown's motion for summary judgment are reversed.

*So ordered.*