44 Mass. App. Ct. 29 (1997)                                    29

Baldwin Crane & Equipment Corp. v. Riley & Rielly Insurance Agency, Inc.

BALDWIN CRANE & EQUIPMENT CORP. *vs.* RILEY & RIELLY
INSURANCE AGENCY, INC., & another.[1]

No. 95-P-87.

Middlesex. October 22, 1996. - December 12, 1997.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Insurance,* Broker, Agent. *Contract,* Insurance agency, Performance and
breach. *Negligence,* Insurance agent. *Practice, Civil,* Summary judgment.

In an action brought by an insured against its insurance broker on theories of
breach of contract, negligence, and breach of fiduciary duty, the record on
summary judgment warranted the judge's ordering judgment for the
defendants on all claims. [31-33]

CIVIL ACTION commenced in the Superior Court Department on
September 1, 1993.

The case was heard by *Hiller B. Zobel,* J., on a motion for
summary judgment.

*Geoffrey H. Lewis* for the plaintiff.

*Robert P. Powers* (*Leigh-Ann Patterson* with him) for the
defendants.

ARMSTRONG, J. The plaintiff sued its insurance broker (Riley &
Rielly), not on the relatively familiar ground that the broker
failed to procure a policy offering the desired coverage, see,
e.g., *Rae* v. *Air-Speed, Inc.,* 386 Mass. 187, 192 (1982); *Howard*
v. *G.H. Dunn Ins. Agency, Inc.,* 4 Mass. App. Ct. 868 (1976),
but on the ground that the policy procured by the broker did not
afford the plaintiff a return premium in the event that its sales
fell short of the estimate on which the premium had been set.
Instead, the premium for the policy, $104,006, was a minimum
premium, payable for the full twelve months of coverage
whether or not the sales estimate was achieved. (It was,
however, as we read the policy, adjustable upward at the rate of

---

[1]Donald J. Rielly, Jr.

$74.29 per $1000 of sales if the estimate were exceeded.) From a judgment in favor of the broker, the plaintiff appeals.

In years previous to the policy year at issue, Riley & Rielly had obtained for the plaintiff return premium policies, wherein the deposited premium calculated on estimated sales would be adjusted upward or downward at year's end depending on sales experience. The expiring policy, issued by National Union Fire Insurance Company, carrying an estimated premium of $166,307, was of the return premium type. National Union offered a renewal policy carrying a premium, based on the $1,400,000 sales estimate, of $147,000; but the renewal policy would be based on a minimum premium, no part of the deposit being refundable if sales fell short of the estimate. The plaintiff asked Riley & Rielly to look for a policy that would cost less.

Riley & Rielly, based on its survey, forwarded to the plaintiff a chart comparing three potential replacement policies with the expiring policy. The chart arranged the four policies in four columns, and the features on which the policies were compared were arranged as crossbars. The "Estimated Premium" (i.e., premium based on the $1,400,000 sales estimate) was $180,900 for the first company (First State), $147,000 for the second (National Union), and $104,000 for the third (Richter Robb), as compared with $166,307 under the expiring policy with National Union. The next crossbar was for "Minimum Premium": $180,900 for First State, $147,000 for the National Union renewal policy, $109,206 for Richter Robb (including a surplus lines tax and a service fee), and "NONE" for the expiring National Union policy. Other crossbars compared the policies in respect of rates per $1000, deductibles, exclusions, and the like.

Linda Finlayson, office manager for the plaintiff, acknowledged that she received and studied the comparative figures. The president, Richard Baldwin, discussed this and other insurance matters with Donald J. Rielly for the agency, although neither recalls their having talked directly about the return premium of the expiring policy and the minimum premiums of the proposed replacement policies. Finlayson remembered being under the impression during the process that the new premium, like the old, would be of the return type, although she does not contend that anyone from Riley & Rielly made any representation to that effect. Baldwin instructed Riley & Rielly to purchase the Richter Robb policy. Sales fell substantially short of the

44 Mass. App. Ct. 29 (1997)                               31

Baldwin Crane & Equipment Corp. *v.* Riley & Rielly Insurance Agency, Inc.

estimate, only $821,000. The plaintiff sought a refund of $43,000 without success.

The plaintiff based its claims for damages against Riley & Rielly on theories of breach of contract, negligence, and breach of fiduciary duty. The contract theory is predicated on an assertion that the plaintiff hired the agency to procure a replacement policy "on the same terms and conditions as previously obtained"; and that the tender of the new policy carried an implied representation that the terms and conditions were the same. There is absolutely no support for this argument in the record; the comparison chart ticked off numerous variations in the terms and conditions of the proffered replacement policies, comparing each to the expiring policy. In particular, each of the replacement policies carried a "minimum premium," whereas the expiring policy carried "NONE." One need look no further than the dictionary to see "minimum premium" defined as "the smallest single charge for which an insurer will write a particular policy having a specified period." Webster's Third New Intl. Dictionary 1438 (1993). The information supplied was succinct but not inaccurate. Contrast *Allston Fin. Co.* v. *Hanover Ins. Co.*, 18 Mass. App. Ct. 96, 98-99 (1984).

The negligence and fiduciary duty theories both relied on the assertion that the agency failed to inform the plaintiff that the replacement policy from Richter Robb would carry a minimum premium rather than a refundable premium.[2] The evidence being to the contrary, the judge did not err in ordering summary judgment for the defendants. It is not tenable to argue that Riley & Rielly had a duty to ensure that Baldwin and Finlayson understood the full import of the meaning of "minimum premium." The relationship between an insurance broker and the insured is not normally thought to be fiduciary in nature, see

[2]The three cases relied on by the plaintiff all involve brokers who agreed to furnish replacement policies or policies meeting particular specifications but failed to inform the insured of major gaps left by the obtained coverages. See *Reserve Ins. Co.* v. *Pisciotta*, 30 Cal. 3d 800, 816-817 (1982) (replacement policy left gaps between the primary policy and the excess policy); *deMarlor* v. *Foley Carter Ins. Co.*, 386 So. 2d 22, 23 (Fla. Dist. Ct. App. 1980) (broker agreed to furnish coverage called for by the plaintiff's lease but omitted required fire insurance without so informing plaintiff); *Cambre* v. *Travelers Indem. Co.*, 404 So. 2d 511, 515-516 (La. Ct. App. 1981) (broker failed to inform plaintiff that he could not obtain "all risks" insurance on plaintiffs' skiff, as sought by plaintiff, procuring instead a "named risks" policy that excluded coverage for theft of the vessel).

*Robinson* v. *Charles A. Flynn Ins. Agency, Inc.*, 39 Mass. App. Ct. 902, 902-903 (1995); O'Donnell, An Overview of Insurance Agent/Broker Liability: Claims by Policyholders, Insurers and Third Parties, 80 Mass. L. Rev. 135, 138-139, 142 (1995), absent "special circumstances of assertion, representation and reliance." *Rapp* v. *Lester L. Burdick, Inc.*, 336 Mass. 438, 442 (1957). *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 500-501 (1980). See generally 3 Couch, Insurance § 46:37, at 51-52 (3d ed. 1995), and the thoughtful discussion in *Sandbulte* v. *Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 464-465 (Iowa 1984). "An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." *Sandbulte, supra* at 464. See 16A Appleman, Insurance Law and Practice § 8836, at 64-66 (rev. ed. 1981) ("Ordinarily . . . an insurance agent assumes only those duties normally found in an agency relationship . . . and he assumes no duty to advise the insured merely by such relationship.") "Although an insured is entitled to rely on his broker as his agent, an insured cannot abandon all responsibility for ascertaining the terms of the coverage his broker obtained." *Campione* v. *Wilson*, 422 Mass. 185, 196 (1996).

There is no merit to the contention that the judge acted improperly in entering summary judgment for the defendants, when the only fully noticed motion before him was the plaintiff's motion for summary judgment as to one issue only. It is within a court's authority and discretion to grant full summary judgment sua sponte when presented only with a motion for partial summary judgment. *Gamache* v. *Mayor of N. Adams*, 17 Mass. App. Ct. 291, 295 (1983). *Langton* v. *Commissioner of Correction*, 34 Mass. App. Ct. 564, 575 (1993). The plaintiff was alerted to the fact that the court would be considering a full summary judgment by virtue of receiving, in advance of the hearing, the defendants' motion for full summary judgment. The plaintiff availed itself of the opportunity to provide the court with affidavits and other supporting documentation and was given a full hearing on the motion. Even now, on appeal, the plaintiff suggests no unexplored factual issue that would have a

bearing on the decision. There has been no prejudice to the plaintiff.

*Judgment affirmed.*