VIRGIL MARTINONIS & another[1] *vs.* UTICA NATIONAL
INSURANCE GROUP & another.[2]

No. 05-P-53.

Essex. November 2, 2005. - January 19, 2006.

Present: LAURENCE, GRASSO, & DOERFER, JJ.

*Insurance,* Homeowner's insurance, Fire, Agent's negligence. *Negligence,* Insurance agent.

In an action brought by an insured against an insurance brokerage firm (firm) for negligence, the insured presented adequate evidence to defeat the firm's motion for summary judgment by creating a material issue of fact as to whether special circumstances existed giving rise to a duty on the part of the firm's agent to ensure that adequate insurance was obtained. [420-422]

CIVIL ACTION commenced in the Superior Court Department on January 25, 2002.

The case was heard by *Patrick J. Riley,* J., on a motion for summary judgment.

*Richard E. Heifetz* for Utica National Insurance Group.

*Robert P. Powers* for Beverly Insurance Brokerage, Inc.

*Richard W. Kearney* for the plaintiffs.

DOERFER, J. The defendant Beverly Insurance Brokerage, Inc. (Beverly), obtained a homeowners policy for the plaintiffs from the defendant Utica National Insurance Group (Utica). The plaintiffs' home was destroyed by fire. The policy limit of liability was $469,000, and Utica paid the policy in full. The actual covered loss to the plaintiffs was claimed to be $1,164,012.43. The plaintiffs claim that Beverly was negligent in failing to advise them to obtain a higher amount of limit of

[1]Regina Martinonis.
[2]Beverly Insurance Brokerage, Inc.

liability. Summary judgment was awarded to Beverly.[3] A review of the summary judgment materials show, for the reason we now describe, that a finder of fact could conclude under the relevant legal standards that Beverly was negligent and that such negligence caused the plaintiffs to have an insufficient limit of liability for the property damage done to their home by the fire. Judgment in Beverly's favor must be reversed and the matter stand for trial.

*Facts.*[4] The insurance at issue is the amount of property damage coverage under a homeowners insurance policy. Under the terms of the policy, to be adequately insured for replacing the damage or loss to real property, the insurance should cover the fair replacement cost.[5]

The plaintiff Regina Martinonis testified at deposition that she and her husband met with Michael O'Brien, a duly authorized agent of Beverly, in August, 2000, at their home. At the same time, someone from Utica was going around measuring the house for an appraisal. Although the meeting was informal (they knew each other on a casual social basis), O'Brien was there to discuss insurance on their home. O'Brien commented that the insurance for the contents of the house was inadequate and those limits were raised. Mrs. Martinonis testified that she was "concerned that we would be covered adequately" and that she had expressed that concern to O'Brien

___

[3]Summary judgment was also awarded to Utica, a decision we affirm for the reason that no adequate argument was made on appeal. See *Cameron* v. *Carelli*, 39 Mass. App. Ct. 81, 85-86 (1995). In any event, the record does not support any claim against Utica.

[4]We take the facts from the affidavits, depositions, and other discovery material on file as well as any allegations in the complaint that were admitted in the defendants' answers. We do not consider any matters raised in the plaintiffs' motion under Mass.R.A.P. 8(c), as amended, 378 Mass. 932 (1979), or any "findings of fact" issued by the judge in response to that motion. A motion for summary judgment is decided under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), on the written record described therein and not upon any testimony, evidence, or representations made at the hearing on such a motion, see *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 713 (1991), unless of course matters are stipulated to at that hearing. See *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 130 n.2 (1993).

[5]Under the policy, the amount of insurance must be eighty percent or more of the fair replacement cost at the time of the loss in order for the insured to recover the replacement cost without any deduction for depreciation of the property.

not only in August, 2000, but also in prior years. She claimed she relied upon him to know the replacement value per square foot and depended on him "to keep track of that" and to make sure that the replacement cost figure in the policy was adequate.

The renewal policy for the period September 13, 2000, to September 13, 2001, listed the limit of liability as $469,000. Mrs. Martinonis thought it was too low. She knew the assessed value of the house was around $400,000 and that the assessing authorities were slow to catch up with market value. She also knew that houses in her area were selling for over one million dollars. She called O'Brien, told him of these concerns, and specifically asked him if the insurance was adequate for replacement value. She mentioned the assessed value issue. "And he reassured me that that amount would be adequate enough for replacement value." She then testified, "So I thought to myself, maybe it's the land that has additional value, maybe because our house is so old [it] has really less of a value for replacement value. I did not quite really comprehend how he came to that conclusion, but I definitely brought up to him all of this information and questioned him and asked him and asked him whether it shouldn't be increased. And he reassured me that that should be adequate." On January 29, 2001, the plaintiffs' house was totally destroyed by a fire.

Beginning in 1992, the plaintiffs bought several types of insurance through O'Brien, including property insurance for their dwelling and their investment properties, as well as automobile insurance. Mrs. Martinonis testified that she would question him about the adequacy of their insurance over the years and that O'Brien would always say it was adequate or would raise it if necessary.

*Discussion.* There is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured. See *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. 29, 32 (1997), quoting from 16A Appleman, Insurance Law & Practice § 8836, at 64-66 (rev. ed. 1981) ("Ordinarily . . . an insurance agent assumes only those duties normally found in an agency relationship . . . and he assumes no duty to advise the insured merely by such relationship").

See also *Construction Planners, Inc.* v. *Dobax Ins. Agency, Inc.*, 31 Mass. App. Ct. 672, 675 (1991) (broker generally has no duty to obtain insurance or renew an expiring policy). The agent does not, in general, have a fiduciary duty to the insured in this regard. See *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. at 31-32. Nevertheless, in an action against the agent for negligence, the insured may show that special circumstances prevailed that gave rise to a duty on the part of the agent to ensure that adequate insurance was obtained. *Ibid.* "[S]pecial circumstances of assertion, representation and reliance" may create a duty of due care. See, e.g., *McCue* v. *Prudential Ins. Co.*, 371 Mass. 659, 661 (1976); *Construction Planners, Inc.* v. *Dobax Ins. Agency, Inc.*, 31 Mass. App. Ct. at 675, and cases cited therein.

Here the plaintiffs presented adequate evidence of such special circumstances, in opposition to Beverly's motion for summary judgment, to create a genuine issue of material fact on that issue. Mrs. Martinonis's testimony about the long relationship with O'Brien, the reliance she placed on his review of the adequacy of their insurance, his specific assurance on past occasions in response to inquiries that the policies had adequate limits of liability, and the specific assurance in the case at bar that the limits were proper were sufficient to defeat a motion for summary judgment. See *Construction Planners, Inc.* v. *Dobax Ins. Agency, Inc.*, 31 Mass. App. Ct. at 676.

This was not a case in which O'Brien was being asked to advise the plaintiffs on the limits of liability insurance. Cf. *Robinson* v. *Charles A. Flynn Ins. Agency, Inc.*, 39 Mass. App. Ct. 902, 902-903 (1995) (no broad duty to inform and advise insured of the availability or limits of uninsured motor vehicle coverage). Nor are the plaintiffs claiming that O'Brien had some fiduciary duty to explain the type of insurance involved. Cf. *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. at 31-32 (no duty to ensure that client understood the full import or meaning of the terms of coverage in a policy). Rather, the facts supplied by the plaintiffs indicate that O'Brien was specifically consulted on the question of fair replacement value and that the plaintiffs were assured that such limits were proper. Furthermore, when the policy issued with

limits that Mrs. Martinonis suspected were too low, she was allegedly told by O'Brien that they were sufficient. These factors, combined with the long history of the relationship between O'Brien and the Martinonis family, the insurance policies they placed with him for a variety of other properties, and their regular reliance on his advice, make clear that summary judgment for Beverly should not have been allowed. See *McCue* v. *Prudential Ins. Co.*, 371 Mass. at 661-662 (observing that a jury could have properly found special circumstances based upon the nature and duration of the relationship, where a long-term continuing relationship existed, the insurer's agents made monthly visits, and plaintiffs held several different policies with the insurer).

Beverly places great emphasis on the fact that no separate compensation in addition to normal commissions on premiums was requested by or paid to O'Brien to reflect the services he rendered in supplying counsel and advice, citing *Rapp* v. *Lester L. Burdick, Inc.*, 336 Mass. 438, 442 (1957); *Bicknell, Inc.* v. *Havlin*, 9 Mass. App. Ct. 497, 500-501 (1980); and *Baldwin Crane & Equip. Corp.* v. *Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. at 32. The *Baldwin Crane* case in turn relies on language in *Sandbulte* v. *Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 464-465 (Iowa 1984). But the absence of separate compensation does not mean that special circumstances giving rise to a duty of care did not exist. *Capital Site Mgmt. Assocs.* v. *Inland Underwriters Ins. Agency, Ltd.*, 61 Mass. App. Ct. 14, 18 (2004) (distinguishing the *Baldwin Crane* case and reasoning that the broker had a duty even though it received no separate consideration to provide advice). The facts here are enough to create a material issue of fact as to whether special circumstances exist on the issue of duty sufficient to survive summary judgment.

So much of the judgment allowing Beverly's motion for summary judgment is reversed, and the case against it is remanded to the Superior Court for further proceedings. So much of the judgment allowing Utica's motion for summary judgment is affirmed.

*So ordered.*