Feeley, Timothy Q., J.
Plaintiff and defendant-in-counterclaim Nautilus Insurance Company (“Nautilus”) now moves to dismiss Count II of the Counterclaim of defendant GS Construction Corp. (“GS”). At the scheduled hearing of this motion, inexplicably not attended by Nautilus’ counsel, the court heard at length from counsel for GS. Additionally, the court has before it memoranda submitted in support of and in opposition to the motion. For the reasons stated below, the court grants the motion and dismisses Count II of the Counterclaim filed by GS against Nautilus.
Background
1.Nautilus’s Complaint for Declaratory Judgment
On December 26, 2007, Nautilus commenced this action, seeking a declaratory judgment with respect to its obligations under a general liability insurance policy issued to GS, a general contracting company, that was in effect at the time of an injury allegedly received at a construction site on February 24, 2006 by defendant Paulo Cesar Sabino (“Sabino”).
On May 4, 2007, Sabino filed a civil complaint against Holly Management and Supply Corporation (“HMS”) a general/contractor or owner/developer of a twenty-four-unit apartment building project in Hyannis, Massachusetts (the “Sabino action”) [Civil No. 07-876-C (Worcester Super. Ct.)]. GS performed subcontract work for HMS related to framing and deck work. Sabino appears to have worked for a person/company to which GS subcontracted some of its work on the Hyannis project. Sabino alleges, among other things, that GS was negligent, causing him to be injured when he fell from a ladder while working on the Hyannis project. Nautilus contends that it did not receive notice of Sabino’s injury from GS until on or about June 5, 2007, about a month after Sabino’s suit was filed. GS contends (on information and belief) that Nautilus, through its local agent, knew about the injury on or shortly after the date of the accident.
Nautilus notified GS in a letter dated July 13, 2007, that for various specified reasons, its insurance policy does not provide coverage for any of the claims or damages asserted by Sabino in his action against GS. Nevertheless, Nautilus agreed to provide a defense for GS in the Sabino action, and is paying for that defense subject to a full reservation of rights, including its rights to disclaim any liability, to withdraw from the defense, and to bring this declaratory judgment action to resolve various coverage and contractual issues.
In this action, Nautilus alleges that its policy does not cover GS for the following reasons:
1. The policy was not intended to provide coverage for the risk of injury presented by work on multifamily homes or multi-family apartment buildings;
2. GS was not named as an additional insured on any commercial general liability policy of Sabino’s employer, or did not have in place a hold Harmless agreement from Sabino’s employer;
3. Alternatively, if Sabino was GS’s employee, the policy would not cover what would be a workman’s compensation claim against GS; and
4. GS did not notify Nautilus in a timely fashion of the accident and injury to Sabino.
This declaratory judgment action asks this court to declare that the damages sought by Sabino (and HMS) against GS in the Sabino action are not covered under the Nautilus insurance policy, that Nautilus has no obligation to defend or indemnify GS with respect to the Sabino action, and that Nautilus may accordingly withdraw its defense of GS in the Sabino action.
2. Counterclaims of GS Against Nautilus
In Count I of its Counterclaim, GS seeks declaratory relief that is the flip-side of that sought by Nautilus. That is, GS would have this court declare that the *560 Nautilus insurance policy provides coverage for the claims of Sabino (and HMS) against GS, and that Nautilus has an obligation to defend and indemnify GS in the Sabino action.
In Count II of its Counterclaim, GS alleges a violation of G.L.c. 93A, §§2 and 11. GS alleges that Surplus Services Insurance Agency, Inc. was an authorized agent of Nautilus and:
1. Sold GS a commercial general liability policy in 2002, that was renewed and in effect at the time of Sabino’s accident;
2. Knew that, since 2002, GS held itself out as being able to, and did, build decks in the usual course of its construction business, and framing includes but is not limited to framing decks and porches;
3. Knew, prior to October 7, 2005, that GS provided framing services for condominium and other projects beyond single-family homes;
4. Knew that the scope of the construction projects being undertaken by GS had expanded significantly beyond framing of single-family homes;
5. Knew that GS provided framing services on condominium projects while operating under a general liability policy issued by Nautilus;
6. Never advised (nor did Nautilus) GS to modify or alter its insurance policy; and
7. Misrepresented (as did Nautilus) the benefits, conditions, and/or terms of the insurance policy issued to GS.
GS further alleges, in its July 13, 2007 reservation of rights letter, that Nautilus failed to notify GS of the following:
1. That it had the right to control the defense of the Sabino action and to retain counsel of its own choosing at Nautilus’s expense;
2. That it had the right to decline to be represented under a reservation of rights; and
3. That there was a conflict between the interests of GS and the interests of Nautilus, and that GS had the right to assume control of the defense of the Sabino action and to retain its own counsel at Nautilus’s expense.
Finally, GS alleges that Nautilus’s conduct toward GS was in disregard of its known contractual obligations to GS and was intended to secure benefits for itself, resulting in damages to GS. In summary, GS alleges that the above listed conduct of Nautilus constitutes one or more unfair acts or practices under G.L.c. 93A.
Discussion
In considering a motion to dismiss, “the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor, are to be taken as true.’’ Nader v. Citron, 372 Mass. 96, 98 (1977). The Supreme Judicial Court has recently restated the motion to dismiss standard by adopting the recently reformulated standard adopted by the United States Supreme Court. In Iannacchino v. Ford Motor Company, 451 Mass. 623, 636 (2008), quoting liberally from Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007), the Supreme Judicial Court stated:
“While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his lentitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...” What is required at the pleading stage are factual “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief, in order to “reflect! ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the ‘plain statement’ possess enough heft to ‘sho[w] that the pleader is entitled to relief.’ ”
With respect to claimed violations of c. 93A, §11, the standard “is the standard of the commercial market place, and it has been said, accordingly, that conduct does not qualify as ‘unethical’ or ‘unscrupulous’ unless it ‘attaints] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.’ ” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986) (quoting Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979)). It is “higher than the standard employed where actions are brought by a consumer under §9 of the statute.” Madan v. Royal Indemnity Co., 26 Mass.App.Ct. 756, 763, n.7 (1989). Chapter 93A was designed “to encourage more equitable behavior in the marketplace . . . [and impose] liability on persons seeking to profit from unfair practices.” Linkage Corporation v. Trustees of Boston University, 425 Mass. 1, 25 (1997) (quoting Poznik v. Massachusetts Med Professional Ins. Ass’n., 417 Mass. 48, 53 (1994)). However, every negligent or unlawful act is not unfair or deceptive. See Darviris v. Petros, 442 Mass. 274, 278 (2004) (“at the very least, more than a finding of negligence [is required for a violation of c. 93A]’j. And certainly, a mere breach of contract does not establish an unfair or deceptive practice under c. 93A. See Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 344 (1994) (rejecting plaintiffs claim that recovery on the insurance contract automatically established a violation of c. 93A). But, “a knowing violation of contractual obligations for the purpose of securing unwarranted benefits does [violate c. 93A].” Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass.App.Ct. 502, 507 (2004). “Courts must consider whether the nature, purpose, and effect of the challenged conduct is coercive or extortionate.” Id. A practice is unfair or deceptive under c. 93A if it is “within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; . . . *561 is immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injury to [other businessmen].” Linkage Corporation, 425 Mass. at 27 (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
Here, GS’s allegations supporting its assertion that Nautilus engaged in unfair or deceptive practices do not survive the Rule 12(b)(6) standard to be applied to c. 93A claims by this court. The factual allegations fall into three categories.
First, GS alleges that Nautilus’s agent had knowledge of GS’s business, and that the business included the framing of decks, and work on multi-family buildings. The allegations are essentially a rebuttal to a portion of Nautilus’s claim that its insurance policy does not cover the Sabino action. The basic dispute itself is a contract dispute, with Nautilus contending that its policy does not cover the Sabino action, and GS responding with allegations that it does because of Nautilus’s agent’s knowledge of GS’s business. GS may eventually win the dispute over the terms of the contract of insurance and prevail on the declaratory judgment part of this case, but the court finds no bad faith, unethical, or extortionate conduct by Nautilus providing GS a defense in the Sabino action while it asks this court to declare its contractual responsibilities and obligations under the insurance policy it issued to GS. Certainly, there is no support for a finding that GS has sufficiently alleged coercive or extortionate conduct.
Second, GS alleges that neither Nautilus nor its agent advised GS to modify or alter its insurance policy, and that both misrepresented the benefits, conditions, and/or terms. However, GS has not identified a duiy on the part of an insurer to ensure that purchased coverages are to coincide perfectly with an insured’s needs, and has identified no specific misrepresentations made by Nautilus or its agent. See Martinonis v. Utica Nat. Ins. Group, 65 Mass.App.Ct. 418, 420 (2006) (“[t]here is no general duty of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured”). To the degree that the allegations are an attempt to suggest negligence on the part of Nautilus, they fall far below the “(s)pecial circumstances of assertion, representation and reliance” to create a duty of care to sustain a negligence action. Id. at 421. They fall even further below what would be necessary to sustain a c. 93A action.
Finally, GS alleges certain failures to inform in connection with the reservation of rights letter sent to GS. However, GS is now represented by the counsel of its own choosing, paid for by Nautilus. Thus, the failure to include an explanation of such rights, even if required, cannot, in this court’s view, rise to the level of an unfair or deceptive practice under c. 93A.
The bottom line in this case is that a contractual dispute exists between Nautilus and GS as to whether the contract of insurance requires coverage of the Sabino action. GS may think Nautilus has no legitimate basis to deny coverage, but Nautilus has not acted unfairly or deceptively in continuing to pay for GS’s defense, with an attorney of its choice, while it seeks the available judicial remedy of a declaration of the rights of the parties under the contract of insurance.
“(T]he boundaries of what may qualify for consideration as a G.L.c. 93A violation is a question of law.” Darviris, 442 Mass. at 328. Thus, it is for this court to determine if GS has alleged sufficient facts to plausibly suggest an entitlement to relief under c. 93A. In this case, Count II of the Counterclaim, asserting a c. 93A claim against Nautilus does not “possess enough heft” to show entitlement to relief under c. 93A.
ORDER
For the reasons stated above, the plaintiffs motion to dismiss Count II of the defendant’s Counterclaim is ALLOWED.