SULLIVAN, J.
*1224 *673 This is an action against an insurance broker that arises out of an attorney malpractice claim. The plaintiff, Kenneth Perreault, sued his former attorney, Simon Mann, for legal malpractice. Mann settled with Perreault and, as part of the settlement, *674 assigned his rights against his malpractice insurance provider, Liberty Insurance Underwriters, Inc. (Liberty), and its broker, AIS Affinity Insurance Agency of New England, Inc. (AON), to Perreault.[1] Perreault then brought a claim against AON for negligence, breach of contract, and violation of G. L. c. 93A. Perreault now appeals from the grant of summary judgment in favor of AON. At issue is whether Perreault presented sufficient evidence from which a finder of fact could conclude that a special relationship existed between Mann and AON, such that AON had a duty to make certain that Mann had adequate malpractice liability insurance to cover all of Mann's work as an attorney. Perreault also claims AON breached a contract with Mann to procure coverage. We affirm.[2]
Background. We summarize the evidence in the summary judgment record in the light most favorable to the plaintiff, the nonmoving party. See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).
1. Legal malpractice claim. In September, 2008, Perreault retained Mann to represent him in a wrongful death action. Perreault wanted Mann to advise him regarding an action against tobacco companies for the death of his wife due to cancer. Perreault's wife died in March, 2006. The statute of limitations on a wrongful death action is three years. See G. L. c. 229, § 2.
In May, 2009, Mann obtained a medical opinion regarding the likelihood of success of an action by Perreault. Mann retained a registered nurse, who opined that the case had merit but questioned whether the statute of limitations had run. Mann withheld this report from Perreault and in July, 2009, sent a letter to Perreault stating that there was no likelihood of success on the wrongful death claim and terminating his representation. Perreault sought the opinion of another attorney, who requested Mann's file and determined that there was a viable claim of attorney malpractice. Thereafter, Perreault sent Mann a G. L. c. 93A demand letter and filed suit against Mann.
2. Legal malpractice insurance policies. There are three relevant insurance policies, covering three firms with which Mann was involved during the relevant time period. All of these policies were "claims made and reported" policies. The parties agree *1225 that *675 coverage was available only when both the alleged misconduct and resulting claim arose during a policy period. That is, if the alleged malpractice arose before the policy period, coverage would only be available if the malpractice arose on or after a policy's "prior acts" date, or fell within an "automatic extended reporting period" of sixty days after the policy terminated.[3]
a. A & G policy. In 2006, Mann was an associate at the law firm of Arnowitz & Goldberg (A & G). The law firm consisted of Mann, Jerrold Arnowitz, and Henry Goldberg. Mann had no involvement in acquiring or purchasing the A & G professional liability policy with Liberty through AON. He did not review the A & G policy, did not discuss the policy with Arnowitz or Goldberg, and had limited communication with AON regarding the A & G policy.
b. AGM policy. In 2007, Arnowitz, Goldberg, & Mann LLC (AGM) was formed. Mann, now one of three managing members of AGM, contacted Kathleen Burns at AON in August, 2007, to obtain insurance coverage for AGM. Burns sent Mann an application and helped him fill out pertinent information to complete the application. Although Mann claims that he "relied exclusively on [Burns's] advice and recommendation as to different types of policies," Burns did not evaluate AGM's particular coverage needs and was not asked to provide risk management services or consultation regarding the scope of insurance that AGM might need. AON placed AGM's malpractice insurance policy with Liberty.
c. Mann Firm policy. In late December, 2009, Mann left AGM. Mann opened the Law Offices of Simon Mann (Mann Firm) and contacted Burns to obtain a new malpractice policy for the Mann Firm. Mann relied on Burns regarding insurance coverage for the Mann Firm. Mann instructed Burns to purchase a new policy for the Mann Firm with a starting date of January 4, 2010. Mann did not disclose the Perreault claim on the application, but he told Burns that he "needed coverage for all my past work since I first became an attorney in 2006." On December 15, 2009, Burns responded, "Please make [the AGM policy] payment so that [it] does not cancel so we can offer you prior acts."[4] Mann then sent *676 AON the AGM policy payment.
On December 24, 2009, Mann sent instructions to Burns via electronic mail message (e-mail) to cancel the AGM policy. On December 28, 2009, Burns responded, "I just need this request on firm letterhead with the date to cancel. Please let the other attorneys know they will not have any coverage. The [A & G] policy was cancelled for non payment. Please read (all *1226 attorneys) the provision for the extended reporting period endorsement." That same day Mann responded on AGM letterhead, "Please cancel the insurance policy for [AGM] effective no later than December 31, 2009."[5] Mann did not purchase extended reporting coverage for the Mann Firm. Immediately thereafter, Burns responded, "We received the request and will cancel the [AGM] policy 12/31."
The Mann Firm account was then transferred to Matthew Kiernan of AON, who handled new accounts. Kiernan communicated with Mann about the Mann Firm policy application. On January 4, 2010, Kiernan sent a completed application to Mann for review and approval. Mann executed the application, manually checked a box indicating that it was for a policy with a January 4, 2010, prior acts date, and returned the executed application to AON on January 5. On February 2, 2010, the Mann Firm policy issued with coverage for the period of January 4, 2010, to January 4, 2011. The policy had a prior acts date of January 4, 2010, and no tail. After receiving the policy, Mann did not review it.
d. Commencement of the malpractice action. In March, 2010, Perreault sent a G. L. c. 93A demand letter to Mann. Mann sought *677 coverage for the malpractice action from Liberty. Liberty declined coverage under two of the three policies at issue: The AGM policy because it was cancelled, pursuant to Mann's request, on December 31, 2009;[6] and the Mann Firm policy because it was not in effect until January 4, 2010, and did not have prior acts coverage before that date, or a tail. Liberty agreed to provide a defense under the A & G policy. Mann hired new counsel and reached a settlement with Perreault, assigning his rights to any claims against Liberty and AON to Perreault.[7] This litigation ensued.
Discussion. On appeal, "[w]e review a grant of summary judgment de novo." Miller v. Cotter, 448 Mass. 671, 676, 863 N.E.2d 537 (2007). We look to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc., 410 Mass. at 120, 571 N.E.2d 357. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).
1. Negligence -- duty. As the plaintiff properly acknowledges, there is "no general duty of an insurance agent to ensure that the insurance policies ... provide coverage that is adequate for the needs of the insured." Martinonis v. Utica Natl. Ins. Group, 65 Mass. App. Ct. 418, 420, 840 N.E.2d 994 (2006). See Robinson v. Charles A. Flynn Ins. Agency, Inc., 39 Mass. App. Ct. 902, 902-903, 653 N.E.2d 207 (1995). However, an insurance agent may acquire a greater duty of investigation, advice, and assistance to an insured by reason of "special circumstances." McCue v. Prudential Ins. Co. of America, 371 Mass. 659, 661-662, 358 N.E.2d 799 (1976). Martinonis, supra at 421, 840 N.E.2d 994. Such "special circumstances of assertion, representation and reliance" may create a duty of due care. McCue, supra at 661, 358 N.E.2d 799, quoting from *1227 Rapp v. Lester L. Burdick, Inc., 336 Mass. 438, 442, 146 N.E.2d 368 (1957).
Factors creating special circumstances include (1) a prolonged business relationship; (2) the complexity and comprehensiveness of the customer's coverages; (3) the frequency of contact between a customer and agent to attend to the customer's insurance needs;
*678 and (4) the extent to which a customer relies on the advice of the agent by reason of the complexity of the policies. See McCue, 371 Mass. at 661-663, 358 N.E.2d 799 ; Bicknell, Inc. v. Havlin, 9 Mass. App. Ct. 497, 500-501, 402 N.E.2d 116 (1980) ; Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass. App. Ct. 672, 674-676, 583 N.E.2d 255 (1991). The list is not exhaustive; for example, enhanced duties will arise "when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc., 44 Mass. App. Ct. 29, 32, 687 N.E.2d 1267 (1997) (quotation omitted).
Viewing the undisputed facts in the light most favorable to the plaintiff, no rational finder of fact could conclude that special circumstances existed such that AON owed Mann a duty of care. Although Burns had worked with A & G since 2005, Mann did not have a prolonged business relationship with AON and had no involvement in acquiring or purchasing the A & G professional liability policy. Mann did not communicate personally with AON until 2007, when he sought professional liability coverage for AGM, and then again in 2009, to place the Mann Firm coverage. His relationship with AON spanned only three years. Contrast McCue, 371 Mass. at 660, 662, 358 N.E.2d 799 (twenty-eight-year relationship between insured and agent involving seven different policies).
Mann's insurance needs were not complex but, rather, were limited to basic malpractice liability insurance coverage. Burns communicated perfunctorily with Mann via e-mail, telephone, and letter. Burns did not evaluate AGM's particular coverage needs and was not asked to provide risk management services or consultation regarding the scope of insurance that AGM or the Mann Firm might need. Contrast McCue, 371 Mass. at 662, 358 N.E.2d 799 (agent made monthly visits to attend to client's insurance needs); Martinonis, 65 Mass. App. Ct. at 421-422, 840 N.E.2d 994 (plaintiffs asked specific questions about adequacy of policy limits and were assured by agent that policy limits were proper). Neither AGM nor Mann paid any additional fees for professional advice. See Baldwin Crane & Equip. Corp., 44 Mass. App. Ct. at 32, 687 N.E.2d 1267.
Perreault looks to statements from AON's Web site to support the existence of a special relationship. As the motion judge stated, "[S]uch reliance is misplaced because [Perreault] has not even alleged that Mann relied on, or ever even read, these statements prior to this lawsuit." Furthermore, the affidavit of Joseph Guerrero, president of AON's "Attorneys' Advantage" and "A & E Advantage"
*679 divisions, states that the Web site Perreault references pertained to a division of AON with which Mann did not deal and listed services that the division Mann dealt with did not provide to attorneys who purchased the malpractice liability policies. Neither AGM nor the Mann Firm retained the other AON division to provide additional services.
Perreault also contends that Burns was bound to issue Mann a policy with adequate prior acts coverage because Mann informed Burns that he "needed coverage for all [his] past work since [he] first became an attorney in 2006," and *1228 Burns responded, "Please *680 make [the AGM policy] payment so that [it] does not cancel so we can offer you prior acts." This exchange did not create a special relationship. Burns told Mann that he needed to keep the AGM policy in force if he (or other members of the firm) wanted to be offered prior acts coverage in the future. See note 3, supra. She did not promise to provide prior acts coverage, advise him regarding eligibility, or advise him regarding his insurance needs.
Mann then departed from the path laid out in Burns's e-mail and directed that the AGM policy lapse no later than December 31, 2009. He then manually checked a box on the Mann Firm policy application setting the prior acts coverage date of January 4, 2010. He did not request a tail, despite the fact that Burns told him to read the pertinent clause regarding coverage extensions. When Mann received the Mann Firm policy it specifically stated that it had a prior acts date of January 4, 2010. In the absence of a special relationship, Mann was obligated to review the Mann Firm policy before signing. "[I]n such circumstances, a business entity such as [Mann] should read its policies rather than rely on representations by an agent." See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 307, 636 N.E.2d 247 (1994).
Summary judgment was properly granted on the negligence claim as a matter of law because Perreault did not demonstrate that there were facts in dispute that would establish a duty running from AON to Mann.
2. Contract claim. Perreault contends that even if there was no special relationship, AON's failure to secure prior acts coverage was in breach of contract. The record is devoid of evidence that would permit a fact finder to conclude that there was a contract that obligated AON to ensure Mann had particular coverage. Once again, Perreault relies on the e-mail exchange where Mann stated that he "needed coverage for all [his] past work since [he] first became an attorney in 2006," and Burns's response, "Please make [the AGM policy] payment so that [it] does not cancel so we can offer you prior acts." This exchange did not set forth the material terms of an agreement. See Rodriguez v. Massachusetts Bay Transp. Authy., 92 Mass. App. Ct. 26, 29-30, 80 N.E.3d 365 (2017) (contract must state terms with specificity). Rather, Burns told Mann to keep the old policy in place so that he could ask for prior acts coverage in the future. Mann sent in a payment for the AGM policy, but he soon thereafter shifted course and terminated the AGM coverage no later than December 31, 2009. Mann did not request either a prior acts date going back to 2006 or a tail, despite having the extended reporting period endorsement called to his attention.[8] No contract was made.
3. Chapter 93A. In the absence of a special relationship, there is no merit to Mann's c. 93A claim. Viewed in the light most favorable to Mann, neither Burns's handling of Mann's request for insurance nor the modification of the A & G policy to exclude him constituted an unfair or deceptive act under G. L. c. 93A. See generally Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 820, 17 N.E.3d 1066 (2014). Cf. Construction Planners, Inc., 31 Mass. App. Ct. at 677-678, 583 N.E.2d 255. Summary judgment was properly *1229 granted as a matter of law.[9]
Judgment affirmed.

Mann purchased Liberty policies through AON. Separate litigation between Liberty and Perreault has concluded. Liberty is not a party to this litigation.

Although we have conducted a de novo review, we acknowledge the judge's thorough and well-reasoned memorandum of decision.

As is discussed infra, Mann also had the option to purchase an additional period of extended reporting, often referred to as a "tail," for a one-year, two-year, three-year, five-year, or unlimited term, but did not.

The Mann Firm could take advantage of AGM's prior acts coverage if AGM was considered to be a "predecessor" of the Mann Firm, making the predecessor firm (AGM) a "named insured." The Liberty policy also defined "predecessor" as
"any law firm, law partnership or professional corporation if fifty percent (50%) or more of the lawyers who were shareholders in, partners of, or employees of such firm, partnership or professional corporation immediately thereafter became partners of, shareholders in, or employees of the named insured."
Mann did not provide Burns with any information regarding the number of attorneys in his firm from AGM. As it turned out, since the Mann Firm was not composed of fifty percent or more of the attorneys working at AGM, AGM was not by definition a "predecessor" of the Mann Firm, although a firm formed by the remaining two partners of AGM may have been a predecessor firm. In addition, predecessor coverage was available only if coverage was continuous, without a gap.

The policy's sixty-day automatic extended reporting period extended the period to report claims under the AGM policy to March 1, 2010.

The sixty-day automatic extended reporting period terminated on March 1, 2010. Mann did not elect a longer period.

Following Mann's departure, A & G contacted Burns and requested that Liberty issue a "Specific Attorney(s) Exclusion" that eliminated coverage for Mann's acts as an A & G associate. Mann had not asked to be updated if there were any changes to the A & G policy, and his former partners did not inform him.

AON also asserts that the Mann Firm could not independently obtain prior acts coverage because it was a newly formed entity which had not been in existence at the time the claim arose. We need not reach that issue because prior acts coverage was not requested.

Perreault also maintains that Mann had coverage under the AGM policy because it was not formally cancelled until January 20, 2010. The AGM policy, as requested, was cancelled on December 31, 2009. The policy states, "This policy may be cancelled by the named insured by surrender thereof to us or by mailing to us a written notice stating when thereafter such cancellation shall be effective." Mann wrote a letter to AON in December, 2009, requesting the AGM policy be cancelled no later than December 31, 2009. December 31, 2009, was the effective date of the cancellation as a matter of law. See Palardy v. Canadian Universal Ins. Co., 360 F.2d 1007, 1009-1010 (2d Cir. 1966) (interpreting like provision of a products liability policy).