**PLAZA 61 and Cressona Plaza, Inc., Plaintiffs,**

v.

**The NORTH RIVER INSURANCE COMPANY, Defendants.**

**Civ. A. No. 75–1116.**

United States District Court, M. D. Pennsylvania.

March 24, 1978.

Harry P. O'Neill, Jr., Edwin Utan, Scranton, Pa., for plaintiffs.

Patrick J. O'Connor, Philadelphia, Pa., B. Todd Maguire, Wilkes Barre, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

This is a diversity action brought by the insured against the insurer on a builder's "all risk" policy. Both parties have moved for summary judgment. There is no dispute as to the following facts:

On October 19, 1972, Cressona Plaza, Inc., Plaintiff in this action, entered into a contract with Majo Corporation (hereafter Majo)[1] for construction of a shopping center in Pottsville, Pennsylvania, which was to be known as "Plaza 61".

In connection with the construction of Plaza 61, Plaintiff secured from Defendant a builder's "all risk" insurance policy, providing for coverage as follows:

2. PROPERTY INSURED

This policy covers the property of the Insured, or the liability of the Insured for the property of others, consisting of all buildings in the course of construction, alteration or repair by the insured, including temporary structures, and materials used in construction, alteration and repair of such buildings, while in transit to the job site and while there awaiting installation.

6. THIS POLICY INSURES AGAINST

All risks of direct physical loss or damage to the insured property from any external cause except as hereinafter provided.

---

1. Majo has never been a party to this suit.

Majo corporation started work on the shopping center in November of 1972 and continued working at the site until late 1973. Several progress payments were made to Majo during this period, the last of these being on September 25, 1973.

During October and November of 1973 disputes arose between Plaintiff and Majo which culminated with Plaintiff terminating the contract. A letter advising Majo of the termination and giving it, pursuant to the terms of the contract, seven days to vacate the site was sent on November 21, 1973.

On December 5, 1973, fifteen days after receipt of the termination notice, Majo employees vacated the site, taking, in addition to their own tools and equipment, a substantial amount of building material which had been delivered to the site but not yet incorporated in the structure. At some time on December 5 counsel for Plaintiff complained to the State Police that Majo employees were committing theft and vandalism at the construction site. The police visited the site, but no arrests were made nor charges filed, and the removal of material and equipment proceeded uninterrupted.

On January 22, 1975 Plaintiff filed a claim under its policy with Defendant, claiming losses in the amount of $885,555.00 as a result of theft and vandalism by Majo employees on December 5, 1973. Defendant denied coverage, and on June 5, 1975, this suit was commenced, by issuance of summons, in the Court of Common Pleas of Lackawanna County. The suit was subsequently removed to this Court. After discovery, Plaintiff conceded that no vandalism occurred on December 5, 1973, and that certain other elements of loss previously claimed were not covered by the policy. Accordingly, in its motion for summary judgment, it has reduced its claim to $110,-520.14 for lost material.

Meanwhile, Plaintiff has been sued by Majo in the Court of Common Pleas of

Luzerne County. That suit alleges wrongful termination of the contract and claims amounts due for work done prior to termination, and lost profits. Plaintiff has asserted a counterclaim in the Luzerne County suit, charging, inter alia, wrongful removal of material and equipment from the job site. See Answer and Counterclaim, Defendant's Exhibit 10, at 11. Majo's defense to this charge is that removal of the material was proper under the contract and consented to by Plaintiff. see Answer to Counterclaim, Defendant's Exhibit 11, at 10.

■ There is nothing in the record before us to indicate whether the Luzerne County suit has reached an adjudication. It is apparent, however, that there is considerable dispute as to who had the right to the materials stored on the site.[2] The resolution of that dispute is not necessary in deciding the matters now before us. For our purposes it is sufficient to note that there was clearly no theft of insured property, but rather a taking by Majo in the belief, whether or not justified, that the material not yet incorporated in the structure remained Majo's property. Thus Defendant is correct when it points out that it has a good defense to any claim predicated on theft. *Young-Peterson Construction, Inc. v. Potomac Insurance Co.*, 382 F.2d 400 (7th Cir. 1967); cf. *Penn-Air, Inc. v. Indemnity Ins. Co. of North America*, 439 Pa. 511, 269 A.2d 19 (1970).

■ Plaintiff, however, need not establish theft to recover under the policy. "All risk" policies of this type extend coverage to every loss, not specifically excluded by the policy, except those caused by the wilful act of the insured. *Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275 (1966). Thus the only questions which need be decided here are whether Plaintiff has suffered a loss and, if so, whether such loss is excluded from coverage under the policy.

**2.** In addition to the pleadings in the Luzerne County suit, the depositions of Messrs. Slomowitz, Shamus and Murphy filed in this suit also show considerable factual dispute as to the ownership of the materials.

Without knowing the outcome of the Luzerne County litigation it is not entirely clear whether Plaintiff has suffered any compensable loss. If that suit results in a finding that the materials in question belonged to Majo and were rightfully removed from the construction site upon termination of the contract, then obviously Plaintiff had no insurable interest in the goods and suffered no loss when they were removed.

If, on the other hand, the county court litigation results in a finding that Plaintiff had a right to possession of the materials on the site and that Majo's removal of those materials was wrongful, then Plaintiff has suffered a loss in the nature of a conversion. Restatement (Second) of Torts § 222A; *Welded Tube Co. of America v. Phoenix Steel Corp.*, 512 F.2d 342 (3d Cir. 1975). Defendant contends that such a loss is specifically excluded by paragraph 7(j) of the policy, which excepts from coverage any

[l]oss or damage caused by or resulting from misappropriation, secretion, conversion, infidelity or any dishonest act by the Insured or other party in interest, his or their employees or agents, while working or otherwise, or any person or persons to whom the insured property may be entrusted[.]

We are compelled to accept Defendant's interpretation of this clause. The clear intent of the language is to exclude from coverage the intentional carrying off of insured property by those entrusted with its possession in the course of construction. Majo, as general contractor, fits squarely within this exclusion.

We do not accept the proposition, asserted by Plaintiff, that the termination of the contractual relationship between Plaintiff and Majo on November 28, 1973 removes this loss from the above-quoted exclusion. The mere fact that Majo had been told to vacate the site does not change this taking into a theft. Regardless of the status of the parties' legal relations on December 5, 1973, Majo had come into possession of the disputed goods as a result of its work under the construction contract and was carrying them off under a claim of right arising from that contract. This is a risk against which Defendant did not insure.

Since we conclude that this loss was not covered by the policy, we need not reach the questions, raised by Defendant, of timeliness of suit and fraudulent claim.

Summary Judgment will be entered in favor of Defendant.