NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1860
_____

MARY L. DOHERTY;
JAMES DOHERTY;
JOHN DOHERTY,
Appellants

v.

ALLSTATE INDEMNITY COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2:15-cv-05165)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 20, 2018
_____

Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*.

(Opinion Filed:  May 25, 2018)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellants-insureds Mary Doherty, James Doherty, and John Doherty ("the Dohertys") seek review of the District Court's order of April 6, 2017 granting summary judgment on their breach of contract, bad faith, and unfair trade practices claims in favor of Appellee-insurer Allstate Indemnity Company ("Allstate"). For the reasons below, we will affirm the order of the District Court.

## I. FACTS

In December 2005, Mary Doherty met with Thomas McKeon of the McKeon Agency ("McKeon")—an agency that is licensed to sell Allstate insurance policies—and his associate to discuss her insurance needs for two properties located in Bryn Mawr, Pennsylvania. The Dohertys allege that she told the agency she was seeking the "best possible landlord-related property insurance" and that the agency "assured [her] that its [Landlord Policy] was the best possible coverage" for her properties. App. 5.

The Dohertys soon thereafter insured their properties with an Allstate policy (hereinafter "the Policy"). The Policy enumerates the losses that it ensures. It provides, *inter alia*:

> **We** will cover sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection** except as limited or excluded in this policy.

App. 1068. As their names suggest, Coverage A covers property damage to an insured's dwelling and attaching structures, while Coverage B insures property that is separated from a dwelling by a clear space. Both coverages were included in the Policy. Furthermore,

2

under the heading "Losses We Do Not Cover Under Coverages A and B," the Policy disclaimed coverage relating to, *inter alia*, below surface substances, enforcement of building codes and ordinances, wear and tear, and seepage. App. 1068-69. The Policy also excluded from coverage losses caused by vandalism, as well as losses caused by "[a]ny act of a **tenant**, or guests of a **tenant**, unless the act results in sudden and accidental direct physical loss" resulting from a list of enumerated sources. App. 1070.

On October 21, 2013, the Dohertys leased the insured properties to two groups of student tenants. The leases were supposed to run from June 1, 2014 to May 31, 2015. However, the tenants broke the lease on August 31, 2014, in light of the fact that the dwellings were uninhabitable—extensive damage to the properties existed, "including but not limited to broken windows, buckled hardwood floors, water stains and ceiling damage, removed and damaged fixtures and doors, detached ceiling lights and smoke alarms, water damage in the basement, peeling paint, an overgrown lawn, dirty floors and surfaces, a broken stove and refrigerator and trash and mice droppings." App. 10-11.

The police and Radnor Township Code Official Ray Daly responded to the tenants' complaints and documented the property damage and code violations. Daly subsequently returned to the dwellings to post notifications of violation that enumerated various code infractions and ordered Doherty to remedy them. Radnor Township ultimately revoked the student rental licenses for the properties due to the violations. Then, on September 24, 2014, the Township sued the Dohertys in the Delaware County Court of Common Pleas. It alleged that the properties were uninhabitable and that the Dohertys failed to allow

3

Township officials to inspect the premises in conformity with the Township's Rental Housing Code.

Just prior to when the lawsuit was filed, Mary Doherty faxed a letter to McKeon and to Allstate's corporate office on September 6, 2014, stating that she was making a claim for property damage and loss of rent. Allstate misplaced the letter in a file of a pre-existing claim involving the Dohertys. Then on October 4, 2014, Mary Doherty faxed another letter, inquiring why there had been no response to her previous communication. McKeon received the letter and had an associate call and speak with her on the same day. The associate communicated that Doherty could set up a claim by calling 1-800-ALLSTATE, and then followed up with an e-mail. The Dohertys did not comply, and a claim was therefore not opened at that time.

Meanwhile, the Dohertys hired John Rush, a home repair contractor, to estimate the damage, prepare a report, and repair the properties. Then, in November 2014—despite the fact that the Township had revoked her rental license—they leased one of the units to Devin Good and other student renters. Good, however, contends that he spoke with the Township shortly after attempting to move in and was told that he could not do so due to the deplorable living conditions.

On July 30, 2015, Mary Doherty sent another letter to McKeon to complain about Allstate's refusal to acknowledge her claim. She notified Allstate that the Doherty's damages approached $400,000 and that the Township's September 2014 lawsuit invoked Allstate's duty to defend. Allstate opened a claim on August 7, 2015, and its claim adjustor, Tiara Myrick, called Mary Doherty. In a voicemail, Myrick provided her with a claim

4

number and left another message to this effect on August 11. Mary Doherty responded by sending another letter on the same day, contending that "[t]here seems to be some confusion in Allstate's claims handling process." App. 19. Myrick tried communicating with Doherty thereafter, but Doherty "respond[ed] with numerous legal documents." App. 20. Additional attempts by Myrick to contact Mary Doherty were futile.

The Dohertys filed their initial complaint against Allstate in Delaware County for breach of contract, contending that Allstate was required to compensate them for the damage that precipitated the notices of violations and revocations of the renting licenses. Allstate removed the case to the United States District Court for the Eastern District of Pennsylvania. The Dohertys then amended their complaint to add claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. and Cons. Stat. Ann. § 201-1, -9.2(a) (West 2008), and Pennsylvania's bad faith statute, 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West 2017). Allstate filed its motion for summary judgment on January 13, 2017, and the Dohertys purported to "verify" the allegations in her complaint thereafter. In their response to the motion, the Dohertys submitted a report from their proposed expert, James Wagner, a public insurance adjuster, estimating the damage sustained and the costs of the necessary repairs, as well as from David Cole, who opined that Allstate's conduct rose to the level of statutory bad faith. The District Court granted summary judgment on all three claims in favor of Allstate. The Dohertys timely filed this appeal.

## II. __DISCUSSION__[1]

On appeal, the Dohertys make various arguments contending that the District Court erred in granting summary judgment regarding their breach of contract, bad faith, and UTPCPL claims. "Our review of the District Court's [summary judgment] decision is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate." *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009). Thus, summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the reasons below, we will affirm the order of the District Court.

As a threshold matter, the Dohertys contend throughout their brief that the Policy was an "all-risk" policy. An "all-risk" policy is a "policy that by definition 'covers every kind of insurable loss except what is specifically excluded.'" *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256 (Pa. Super. Ct. 2008) (quoting Black's Law Dictionary 815 (8th ed. 2004)). That is, if the Policy does in fact cover "all-risk," then all they must do is prove the fact that there was a loss in order to recover. *See Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 75 (3d Cir. 1989) ("Under an 'all-risk' policy, the only questions which need be decided . . . are whether [the plaintiff] has suffered a loss and, if so, whether such loss is excluded from coverage under the policy." (internal quotation marks omitted)

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

6

(quoting *Plaza 61 v. N. River Ins. Co.*, 446 F. Supp. 1168, 1170 (M.D. Pa. 1978), *aff'd*, 558 F.2d 822 (3d Cir. 1978))). However, the Dohertys' argument is contradicted by the plain language of the Policy, which provides that it "cover[s] *sudden and accidental* direct physical loss to [the] propert[ies]." App. 1068 (emphasis added). The Policy therefore covers only "sudden and accidental" loss, and the Dohertys failed to adduce any evidence that the damage to their properties was anything more than wear and tear and general lack of maintenance. We will therefore affirm the District Court's finding that the damage fell outside of the ambit of the Policy.[2]

The Dohertys put forth five additional primary arguments, none of which is sufficient to create a genuine dispute of material fact or to show that Allstate is not entitled to judgment as a matter of law.

First, the Dohertys contend that the District Court relied on hearsay evidence in granting summary judgment in favor of Allstate. However, they do not state *what* evidence that the District Court relied on constituted hearsay—instead, they only conclusively assert their "objections were based upon a plausible argument that the proffered evidence was

---

[2] On this basis, we reject the Dohertys' argument that the District Court erred by granting summary judgment in Allstate's favor on their breach of contract claim. Furthermore, the Dohertys contend that the District Court was compelled to apply a so-called "mend and hold" doctrine because, according to them and without any further explanation, "the record shows that Allstate has impermissibly attempted to change the basis for its denial of the Dohertys' claim." Appellee Br. at 53 (citing *Railway Co. v. McCarthy*, 96 U.S. 258, 267-68 (1877)). To the contrary, Allstate has consistently maintained throughout this litigation that the Policy is not an "all-risk" policy, and that the damage that occurred was not "sudden and accidental," which—as discussed *supra*—we agree with.

7

inadmissible-as [*sic*] unauthenticated and containing multiple levels of hearsay." Appellant Br. at 33. Regardless, contrary to the Dohertys' assertions, the record reflects that the District Court adequately accounted for their hearsay objections below. *See* App. 11 n.9 ("While several documents referenced here arguably contain hearsay and may not be considered in deciding whether or not to grant summary judgment on Doherty's breach of contract claim, they are relevant and appropriately considered when assessing her bad faith claim as they were part of Allstate's investigation and coverage decision.").[3]

Second, the Dohertys curiously argue that the District Court "improperly weighed Mary Doherty's credibility" because it, *inter alia*, "repeatedly discusse[d] Mrs. Doherty's advanced education and knowledge of legal matters" and relied on her testimony made at a pretrial conference where she alleged that Township officials were responsible for damaging her properties and which was held before she decided to retain counsel. App. Br. at 37. However, the District Court did no such thing. Rather, the District Court made clear that, at the pretrial conference, "Doherty was not under oath and her statements that day are not record evidence." App. 23 n.22. Rather, the District Court discussed her

---

[3] The Dohertys also argue that "large portions of Allstate's evidence is hearsay" and that "the district court was required to exclude it from consideration in its analysis of Allstate's summary judgment motion." Appellant Br. at 48. However, they do not identify what evidence was hearsay, nor do they cite any precedential case of this Court to support their position. We therefore decline to find that the District Court erred on this basis. Regardless, inadmissible hearsay is not grounds for reversal where there was "sufficient evidence without [the improperly admitted evidence] to support the district court's conclusion." *Blackledge v. Blackledge*, 866 F.3d 169, 187 (3d Cir. 2017) (quoting *Winston ex rel. Winston v. Children & Youth Servs. of Del. Cty.*, 948 F.2d 1380, 1391 n.7 (3d Cir. 1991)).

statements for the narrow purpose of "show[ing] what Allstate, through its counsel, learned about Doherty's allegations regarding the property damage." *Id*. Furthermore, the Dohertys' implication that Mary Doherty's legal education inured to her detriment finds no basis in the record. *See United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir. 1985) ("[I]n order to reverse on grounds of excessive judicial intervention, the record must . . . disclose actual bias" (internal quotation marks omitted)). None of the District Court's analysis constituted error of any kind.[4]

In a similar vein, the Dohertys argue that the District Court improperly weighed the credibility of their two experts, James Wagner and David Cole. It did not. As to Wagner, they contend that the District Court erred in disregarding Wagner's report—which merely contains an itemized list of allegedly necessary repairs and their estimated costs—in finding that "the record contains little to no information regarding the alleged damaged conditions or the characteristics of those conditions that suggest they occurred suddenly and accidentally." App. 45. It did not—the District Court properly recognized that the report did not bear on whether the damage was "sudden and accidental" because it contains

---

[4] The Dohertys also argue that the District Court improperly "inferred a negative credibility determination on Mrs. Doherty" by referencing the "Chester matter." Appellant Br. at 36. That matter originated with a libel and slander suit brought by Mary Doherty and which the defendant, Joanne Chester, spent a considerable amount of attorneys' fees to defeat. Mrs. Doherty subsequently opened a claim with Allstate after Chester attempted to recoup her defense costs. The District Court referenced this matter for the sole purpose of indicating that Allstate inadvertently "put the [September 6, 2014] letter in the file of a pre-existing claim involving the Dohertys ("the Chester file")." App. 13. The basis of the Dohertys' claim is therefore entirely without merit, as there is no evidence that the District Court either misrepresented the facts of the matter or drew any improper inferences about her.

no information as to the manner that the damage occurred.  Furthermore, the existence of Cole's report did not preclude the District Court from granting summary judgment on the Dohertys' bad faith claim.  *See Advo, Inc. v. Phila. Newspapers, Inc.*, 51 F.3d 1191, 1198 (3d Cir. 1995) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (U.S. 1993))).  Here, the record is clear that Allstate did not act in bad faith because its misfiling of the September 6, 2014 letter was inadvertent, and, after recognizing this mistake, repeatedly contacted Mary Doherty to instruct her how to open a claim.  Thus, the District Court committed no error by granting summary judgment despite the contentions set forth in Cole's report.[5]

Third, the Dohertys contend that the District Court improperly found that Mary Doherty's conversion of her pleading into a verified complaint—which, for the purposes of summary judgment are treated as affidavits, *see Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 100 n.1 (3d Cir. 2017)—constituted a sham affidavit.  The "sham affidavit" doctrine allows courts to disregard "a contradictory affidavit that indicates only that the

---

[5] For this reason, we also reject the Dohertys' argument that the District Court erred by granting summary judgment on their bad faith claim under 42 Pa. Stat. and Cons. Stat. Ann. § 8371.  To prove a bad faith claim in Pennsylvania, "a plaintiff must demonstrate, by *clear and convincing evidence*, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017) (emphasis added); *see also W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003).  The Dohertys cannot meet this standard because, as discussed *supra*, the Policy did not cover the damage to her properties.

affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In the final version of her pleading-turned-affidavit, Doherty— for the first time—alleged that McKeon misrepresented that the Policy would include very specific coverage. However, the District Court correctly held that the record did not substantiate this allegation in any respect: Mary Doherty never testified to such effect, and she failed to submit an actual affidavit to clarify her testimony. We will therefore affirm the District Court's holding that the verified complaint was a sham. *See id.* ("[I]f it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.").

Fourth, the Dohertys argue that the District Court erred by granting Allstate's motion to quash certain subpoenas seeking additional evidence of Allstate's policies and procedures. "We review the denial of a motion to quash a[] . . . subpoena for abuse of discretion." *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005). Here, discovery was supposed to end on November 17, 2016, and the Dohertys served upon Allstate four subpoenas to testify and produce documents regarding four additional employees who had no ostensible and direct relation to their claims. The denial of such an eleventh-hour request is far from an abuse of discretion, which requires that "the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* at 268 n.5 (quoting *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992)).

11

Lastly, the Dohertys argue that the District Court incorrectly dismissed their UTPCPL claim because "[t]he Dohertys' evidence is sufficient to prove Allstate's deceptive conduct." Appellant Br. at 62. In order to recover under the UTPCPL, a plaintiff's claim must "encompass . . . claims of unfair and deceptive acts or practices in the conduct of any trade or commerce." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 882 (Pa. 2007). However, we agree with the District Court that "[t]he most specific misrepresentation Doherty testified to in her deposition concerned those purportedly made to her by Allstate in pamphlets that told her that she 'was in good hands.' This allegation fails as a matter of law because this statement—that she was in good hands—constitutes mere puffery." App. 75-76 (citation omitted); *see Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("Often, marketing material is full of imprecise puffery that no one should take at face value."). The record is devoid of any deceptive or fraudulent behavior by Allstate or McKeon, and the Dohertys' UTPCPL claim therefore fails as a matter of law.

## III.   CONCLUSION

For the aforementioned reasons, we will affirm the order of the District Court.