SUPERIOR COURT 
 
 LINDA L. CAPPUCCIO, TRUSTEE OF THE STREGA REALTY TRUST VS. PUBLIC SERVICE INSURANCE CO. & ANOTHER[1]

 
 Docket:
 1677CV00694
 
 
 Dates:
 February 3, 2020
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON DEFENDANT PUBLIC SERVICE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT 
 
 

             The plaintiff, Linda L. Cappuccio, sued her insurer, Public Service Insurance Co. ("Public Service"), for unfair settlement practices in connection with a claim that she filed for damage to her commercial property committed by disgruntled tenants as they vacated the premises. She also sued her insurance broker, the Allan Insurance Agency, Inc. ("Allan Insurance"), claiming that its president, Jerrold Kameras, both failed to obtain appropriate coverage for her business and, more centrally, gave her bad advice in the wake of the vandalism. Allan Insurance, in turn, brought a third-party action for contribution against the plaintiff s attorney at the time of the vandalism, Raymond H. Tomlinson, alleging that he had a professional obligation to advise the plaintiff in the matter.
            All three defendants have brought motions for summary judgment pursuant to Mass. R. Civ. P. 56. Because the defendants have sustained their burden of demonstrating that there are no disputed issues of material fact and that they are entitled to judgment as a matter of law, see Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), the motions of Public Service Insurance Co., the Allan Insurance Agency, Inc., and third-party defendant Raymond H.
---------------------------
[1] Allan Insurance Agency, Inc.
                                                            -2-
Tomlinson for summary judgment are ALLOWED, and the case is DISMISSED WITH PREJUDICE.
Background
            Beginning in 2003, Cappuccio operated a restaurant called Strega at 92-96 Lafayette Street in Salem.[2] The building was owned by the Strega Realty Trust (Strega Realty), a real estate enterprise run by Cappuccio. In May 2011, Strega Realty sold most of the restaurant's assets — but not the building or the land at 92-96 Lafayette Street — to Red Lulu Salem, LLC ("Red Lulu"). At the same time, Strega Realty and Red Lulu executed a ten-year lease, allowing Red Lulu to operate a restaurant on the premises. Red Lulu is not a party to this lawsuit.
            From the beginning, the relationship between Cappuccio and Strega Realty, on one side, and Red Lulu and its owners, on the other, was a turbulent one. Red Lulu never opened a restaurant on the premises. In August 2011, Strega Realty sought a temporary restraining order against Red Lulu and its owners. Ultimately, in 2012, Strega Realty sued Red Lulu for breach of contract and default on a promissory note and sought to evict Red Lulu. The parties settled the lawsuit in August 2013. Among the provisions of the settlement was that Red Lulu was required to vacate the premises by October 31, 2013.[3]
            After executing the settlement agreement but before Red Lulu had vacated the premises, Cappuccio had inspected the premises and found them to be "intact." (Dep. of Linda Cappuccio, March 16, 2017, p. 65,11. 4, 8.) Sometime after Cappuccio's inspection of the premises, however, their condition changed. On Saturday, November 2, 2013, Cappuccio reported to the
---------------------------
[2] Ms. Cappuccio's Strega restaurant had no connection with the restaurant by the same name in Boston.
[3] The settlement agreement also provided for Red Lulu to receive a payment of $85,000 from Strega Realty's then-insurer in settlement of Red Lulu's counterclaim against Strega Realty.
                                                            -3-
Salem Police Department that, before vacating the building, Red Lulu's proprietors had caused substantial damage to the premises.[4][5] No criminal charges were sought, and Strega Realty did not sue anyone for causing the damage.
            After discovering the vandalism, Cappuccio contacted Jerrold Kameras, president of Allan Insurance, an insurance brokerage in Salem. Three months earlier, in July 2013, Cappuccio had approached Allan Insurance for help in renewing Strega Realty's commercial property insurance policy.[6] As a result, Allan Insurance had caused Public Service to issue a renewal of the commercial property insurance policy that then covered the premises, effective July 27, 2013. Shortly after the reported vandalism (on or about November 3, 2013), Kameras went to the premises at Cappuccio's invitation to survey the damage. Also within days of discovering the vandalism, Cappuccio contacted Tomlinson, the attorney who had represented her in her lawsuit against Red Lulu and who had arranged the settlement in that matter. The two discussed, among other things, Strega Realty's insurance and how to recover for the damage allegedly caused by agents acting on behalf of Red Lulu.
---------------------------
[4] In her deposition, Cappuccio's account of when the destruction of her property took place was confusing. At one point, she seemed to indicate that the destruction took place well before she caused Strega Realty to sue Red Lulu, LLC, in 2012. (See Dep. of Linda Cappuccio, pp. 38-45.) In the Complaint in this action, however, Cappuccio alleged that the damage was caused "on or about November 3, 2013." Complaint and Jury Demand at para. 8, p. 1. According to the Salem Police Department report on the matter, Cappuccio reported the damage to the Salem Police Department on November 2, 2013.
[5] Since initially reporting the damage, Cappuccio has maintained that Red Lulu's proprietors had caused the damage. The defendants do not dispute this claim. For the purposes of the summary judgment motions, therefore, the court takes the contention as true.
[6] At some earlier time, Cappuccio had become dissatisfied with her previous insurance agent, the Twin Brook Insurance Agency (Twin Brook). (See Dep. of Linda Cappuccio, p. 42, 1. 12.) It is unclear precisely when she became dissatisfied with Twin Brook. It is clear from the record, however, that Cappuccio approached the Allan Insurance Agency, Inc., in July 2013 to seek a renewal of her commercial liability policy from Public Service.
                                                            -4-
            After Kameras's visit to inspect the damage, he and Cappuccio discussed filing an insurance claim to recover for the damage. There is no dispute that Kameras gave Cappuccio advice; the parties disagree strenuously, however, about the substance of that advice. Allan Insurance maintains that Kameras suggested to Cappuccio that Strega Realty should file claims under both Red Lulu's insurance policy (issued by Selective Insurance) and her own, issued by Public Service.[7] Cappuccio alleges that Kameras suggested that she file a claim under only Red Lulu's policy. In any event, Cappuccio filed a claim with Selective Insurance, under Red Lulu's policy, but did not file a claim under her policy with Public Service.
            Several months later, Selective Insurance sent Cappuccio a letter. It explained that Selective Insurance had denied coverage because its policy excluded damage resulting from vandalism committed by its insured, Red Lulu. Cappuccio sent the letter to Tomlinson, who was still her attorney at the time. There is no claim, however, that she notified Kameras or Allan Insurance of Selective Insurance's denial of coverage.
            On November 6, 2015, Cappuccio contacted Public Service to give notice of the property damage on the premises that had occurred just over two years earlier. Public Service retained an adjuster to inspect the property, which Strega Realty had sold in the interim. On December 2, 2015, Public Service issued a reservation-of-rights letter to Cappuccio. The letter notified Cappuccio that, because she had failed to comply with the loss conditions in the Policy, liability under the Policy was not clear. Public Service relied on Cappuccio's failure to notify the company of the loss within two years as required under the Policy. Public Service did not send
---------------------------
[7] In its answers to interrogatories, Allan Insurance represents that Kameras recalled that Cappuccio had told him that she would not file a claim against her Public Service policy because she could not afford to pay the $1,000.00 deductible. (See Allan Insurance Agency's Answers to Raymond H. Tomlinson's First Interrogatories, at pp. 3-4.)
                                                            -5-
Strega Realty and/or Cappuccio a formal denial of the claim before Cappuccio filed this lawsuit in May 2016.
            The complaint initially sought damages against Public Service for breach of contract (Count 1) and unjust enrichment (Count 2), as well as for unfair settlement practices under G.L. c. 176D and c. 93A (Count 4). The first two counts were dismissed by the court (Drechsler, J.) by operation of the statute of limitation. Thus, as to Public Service, only the claim for unfair settlement practices remains. The complaint alleges one count of negligence against Allan Insurance (Count 3). Allan Insurance, in turn, brought an action for contribution against Attorney Tomlinson.
Analysis
            A party is entitled to summary judgment pursuant to Mass. R. Civ. P. 56(c) if there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law. See Boazova v. Safety Ins. Co., 479 Mass. 233, 237 (2012). The moving party bears "the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial." Kourouvacilis, 410 Mass. at 714. The moving party can meet this burden by "demonstrat[ing], by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Id. at 716. If the moving party meets its initial burden, the burden shifts to the non-moving party to provide specific facts to demonstrate that there is a genuine issue of material fact. See Drakopoulos v. U.S. Bank Nat. Ass 'n, 465 Mass. 775, 777-778 (2013). A court reviewing a motion for summary judgment must "draw all reasonable inferences in the light most favorable to the nonmoving party." Id., quoting Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474-475 (2013).
                                                            -6-
I. Defendant Allan Insurance Company's Motion for Summary Judgment
            The plaintiff's lawsuit alleges a single count of negligence against Allan Insurance. (See Complaint at p.3, paras. 22-26.) At the heart of the plaintiff's cause of action against Allan Insurance is the charge that the defendant was negligent in allegedly advising the plaintiff to submit a claim for the vandalism purportedly committed by agents of Red Lulu against Red Lulu's insurance policy and not against her own Policy. Also, although not a model of clarity, the single negligence claim additionally appears to allege that Allan Insurance was negligent in failing to procure the proper coverage for her commercial situation.[8] For analytic purposes, it is simplest to begin with an analysis of the latter claim.
            A. The claim for negligence in advising the plaintiff on coverage selection
                        1. Duty
            In order to establish that Allan Insurance is liable to the plaintiff in negligence for failing to advise her properly about the coverage she should obtain, the plaintiff must prove: 1) that Allan Insurance owed a duty to the plaintiff to advise her about her coverage; 2) that it breached that duty; and 3) that the plaintiff suffered harm as a result. See Rayden Engineering Corp. v. Church, 337 Mass. 652, 660-661 (1958) (duty of care can be established by special circumstances which, when combined with detrimental reliance, create right of recovery). See also McCue v. Prudential Ins. Co. of America, 371 Mass. 659, 661-662 (1976) (same). Even viewed in the light most favorable to the plaintiff, as it must be at this stage, the evidence in the
---------------------------
[8] The Complaint alleges that Allan Insurance did not "properly advis[e] . . . the plaintiff on her . . . coverage selection." (Compl. at p. 3, para. 25. There is no development of this aspect of the plaintiff's claim, assuming that she intended to make it. As the court concludes that such a claim, if in fact it was brought, would fail in any event (see Section I, A, infra), the court analyzes the claim as if it was properly pleaded.
                                                            -7-
record establishes none of these three things. The plaintiff, therefore, has no reasonable expectation of proving the essential elements of such a claim.
            First, as to duty, the record is clear that, at the time of the events in question, Allan Insurance was an insurance brokerage.[9] Ordinarily, an insurance broker owes the insured only a duty to exercise "reasonable skill and ordinary diligence." Hartford Nat. Bank and Trust Co. v. United Truck Leasing Corp., 24 Mass. App. Ct. 626, 630 (1987), citing Bicknell, Inc. v. Havlin, 9 Mass. App. Ct. 497, 500 (1980). A broker is under no general duty to secure a policy that includes adequate coverage for the insured's needs. See Perreault v. AIS Affinity Ins. Agency of New England, Inc., 93 Mass. App. Ct. 673, 677 (2018) (ellipses in original), quoting Martiononis v. Utica Natl. Ins. Group, 65 Mass. App. Ct. 418, 420 (2006). "The relationship between an
---------------------------
[9] The plaintiff argues that the rules that ordinarily apply to insurance brokers do not apply in this case to Allan Insurance. At points, the plaintiff argues that Allan Insurance was an insurance agent and not a broker. At other points, the plaintiff contends that, although Allan Insurance was a broker, it had established a "special relationship" with the plaintiff, such that it assumed obligations to the plaintiff beyond those usually imposed on insurance brokers. In Hudson v. Massachusetts Property Ins. Underwriting Ass 'n., 386 Mass. 450, 455-456 (1982), the Supreme Judicial Court explained the distinction between insurance brokers and agents:
General Laws c. 175, s 162, as amended by St. 1941, c. 286, creates a distinction between insurance brokers and insurance agents. An insurance broker is a person other than an insurance agent, who for compensation 'acts or aids in any matter in negotiating policies of insurance . . . or in negotiating the continuance or renewal of such policies or contracts for a person other than himself.' An insurance agent is a person other than an insurance broker who for compensation, 'solicits insurance on behalf of any company, or transmits for a person other than himself an application for a policy of insurance . . . to or from such company, or offers or assumes to act in the negotiation of any such policy or contract, or in the negotiating of its continuance or renewal.' Id. Thus 'the insurance agent is the representative of the company, and the insurance broker is ordinarily the agent of the insured . . . .' 15 Mass.L.Q. 59 (No. 3, 1930).
Courting confusion, the Commonwealth's appellate courts often use the terms broker and agent interchangeably. Allan Insurance has represented that it is an insurance brokerage. The evidence is overwhelming that this is the case, and the plaintiff advances no evidence suggesting otherwise.
                                                            -8-
insurance broker and the insured is not normally thought to be fiduciary in nature, . . . absent `special circumstances of assertion, representation and reliance.'" Schwartz v. Travelers Indem. Co., 50 Mass. App. Ct. 672, 680 (2001), citing Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc., 44 Mass. App. Ct. 29, 31-32 (1997). "Factors creating special circumstances include (1) a prolonged business relationship; (2) the complexity and comprehensiveness of the customer's coverages; (3) the frequency of contact between a customer and agent to attend to the customer's insurance needs; and (4) the extent to which a customer relies on the advice of the agent by reason of the complexity of the policies." Perrault, 93 Mass. App. Ct. at 677-678. Additionally, lain expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured." Id. Typically, whether such special circumstances exist is a jury question. See id., citing McCue v. Prudential Ins. Co. of America, 371 Mass. 659, 661 (1976).
            In this case, however, there is insufficient evidence from which a reasonable trier of fact could conclude that Allan Insurance owed the plaintiff a heightened, fiduciary duty to advise the plaintiff about the scope of her coverage. See Perrault, 93 Mass. App. Ct. at 678-679 (attorney's three-year relationship with insurance broker, without more, could not impose heightened duty on broker). According to the plaintiff, she approached Allan Insurance in the summer of 2013. (See Dep. of Linda Cappuccio, March 16, 2017, at p. 46, 11. 2-18.) She wanted to "renew" her policy with Public Service [10] and had become dissatisfied with her prior insurance broker, Twin
---------------------------
[10] Throughout her deposition, Ms. Cappuccio referred to the Public Service Insurance Company as "Public Service Mutual" and "Public Mutual." The parties agree that, in doing so, Cappuccio was referring to Public Service.
                                                            -9-
Brook. (Id. at p. 29, 1. 23 — p. 30, I. 19.; p. 46, 1. 19 — p. 47, 1. 11.) When she met with Kameras, she gave him her existing policy and told him that she wanted to renew it. (See id at p. 47,11. 4- 11.) She explained, however, that she "no longer needed workman's comp[ensation insurance] because . . . [she] didn't have employees anymore." (Id., at p. 47, 11. 9-11.) Kameras then "wrote up the policy." (Id. at p. 47, 1. 13.)
            The plaintiff first contacted Allan Insurance fewer than four months before the vandalism at the heart of this case occurred. They had had no preexisting relationship. The plaintiff presents no evidence suggesting that Kameras "evaluate[d the plaintiff's] particular coverage needs . . . [or] was . . . asked to provide risk management services or consultation regarding the scope of insurance that . . . [the plaintiff] might need." Perrault, 93 Mass. App. Ct. at 678. There is no suggestion in the record that the plaintiff relied in any way on Allan Insurance's advice in renewing her existing policy.
            As the plaintiff has come forward with no evidence suggesting that she had the type of special relationship that would warrant imposition of a heightened duty on Allan Insurance's part, the plaintiff cannot prevail on her claim that there was such a duty unless she can point to evidence that could establish that Kameras and/or Allan Insurance held themselves out as insurance specialists. There is, however, no such evidence. The plaintiff points to a few instances of apparently standard advertising language on Allan Insurance's website to support its claim that Allan Insurance held itself out as an insurance specialist. The plaintiff notes that Allan Insurance's website offers "Personal service with a smile" and promises that the brokerage "dovetail[s] every insurance product to meet [their] client's needs." The plaintiff further relies on Allan Insurance's website's assurances that "the agents at Allan Insurance can help you find
                                                            -10-
the protection you need," and, ". . . our agents are experts and can offer you the best policy that fits your individual needs." Pl.'s Mem. of Law in Opp'n to Mot. of Def., Allan Insurance Agency, Inc., for Summ. J., at p. 6.
            At the threshold, there is the difficulty for the plaintiff that she has not come forward with any evidence that: 1) the Allan Insurance website included these statements at the time the plaintiff engaged Allan Insurance to renew her policy; 2) she was aware of them at the time; or 3) she relied on them. As in Perrault, the plaintiff here
. . . looks to statements from . . . [the defendant's] Web site to support the existence of a special relationship. . . . Such reliance is misplaced because [the plaintiff] has not even alleged that [she] relied on, or ever even read, these statements prior to this lawsuit."
Perrault, 93 Mass. App. Ct. at 678. Thus, even if such wholly common language could constitute a claim of special insurance expertise — a proposition for which the plaintiff cites no authority — the plaintiff does not claim to have relied on it. Moreover, were this type of language sufficient to establish that an insurance brokerage had represented itself as an insurance specialist, then virtually all brokerages would be held to have done so, and the special-relationship exception would swallow the rule that, generally, insurance brokers do not owe a fiduciary duty to their clients.
                        2. Breach of duty
            Even assuming, for purposes of argument, that the plaintiff could show that Allan Insurance had a heightened duty to advise her on the adequacy of her commercial liability coverage, she has put forward no evidence of a breach of that duty. In order to establish a breach of duty, the plaintiff would have to establish that Allan Insurance could have done better for her — that is, that Allan Insurance could have secured a policy for her that would have covered acts of
                                                            -11-
vandalism by a tenant.[11] The record is silent on whether such policies are available.[12] One way that the plaintiff might demonstrate the availability of an insurance policy that would have covered acts of vandalism by a tenant would be to present expert testimony to that effect, but she has failed to do so. Whether such policies exist "is not a matter within the common knowledge of the ordinary layperson . . . ." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 402-403 (2003) (standard of care for insurer obligated to defend insured is a matter for expert testimony). There might be other ways to prove that a different approach by Allan Insurance would have yielded better results for the plaintiff, but she has pursued none of them. This would leave a trier of fact without any way to assess whether Allan Insurance could have done anything differently, were it under a duty to advise the plaintiff in selecting coverage.
            The plaintiff directs the court's attention to no record evidence suggesting that Allan Insurance could have secured a better policy for her. Without such evidence, the plaintiff cannot establish that Allan Insurance breached any duty that it might have had to her to secure for her a policy that would have covered vandalism by a tenant.
                        B. The action for negligent claim advice
            As noted above (Section I, A, supra), the core of the plaintiff's claim against Allan Insurance is that Kameras negligently advised her not to file a claim with Public Service after she
---------------------------
[11] To the extent that the plaintiff contends that the policy in question in this case did, in fact, cover damage resulting from Red Lulu's vandalism — see Section I, B, infra — she would have no negligence claim based on Allan Insurance's failure to secure appropriate coverage for her. As the entrustment exclusion precluded her from recovering for Red Lulu's act of vandalism, however — see discussion in Section I,B, infra — she could prevail on such a claim if she could prove both that Allan Insurance had a duty to her to review her coverage and that such coverage was available.
[12] It appears that the entrustment exclusion is a feature of standard commercial property insurance policies. See "I Never Expected Him To Do That!" The Scope of the Entrustment Exclusion, American Bar Association, 29-WTR Brief 61 (Winter 2000) ("[s]tandard policy provisions under all risk commercial property policies typically include" entrustment exclusion).
                                                            -12-
discovered the vandalism. Allan Insurance contests that Kameras gave the plaintiff this advice, but, of course, this type of factual clash is what trials — not summary judgment motions — are for. Thus, to prevail on its summary judgment motion, Allan Insurance must establish that, even if Kameras did give the plaintiff the advice that she claims that he did, she suffered no harm as a result.[13]
            In moving for summary judgment, Allan Insurance maintains that, even if Kameras had advised the plaintiff not to file a claim with Public Service, the plaintiff could not recover as a matter of law because the entrustment exclusion in the plaintiffs Policy excluded coverage for "[d]ishonest or criminal acts by you, any of your partners, employees . . ., directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose." (Policy, Form CP 10 30 06 95, p. 3) (emphasis added). The plaintiff maintains that the entrustment exclusion is ambiguous and that, therefore, it must be read in her favor and thus would not have barred coverage. For the reasons discussed below, however, the court concludes that the entrustment exclusion, read in context, is not ambiguous and would have operated to
---------------------------
[13] To the extent that Allan Insurance argues that it cannot be held liable under any circumstances because Kameras was under no duty to the plaintiff to advise her about claims, its argument goes too far. As noted, above, an insurance broker owes the insured a duty to exercise "reasonable skill and ordinary diligence." Hartford Nat. Bank and Trust Co. v. United Truck Leasing Corp., 24 Mass. App. Ct. 626, 630 (1987), citing Bicknell, Inc. v. Havlin, 9 Mass. App. Ct. 497, 500 (1980). Thus, although in a given situation a broker may have no duty to advise a client, once the broker steps away from that protection and offers advice, it must be reasonable. See id. See also Driscoll v. Board of Trustees of Milton Academy, 70 Mass. App. Ct. 285, 303 (2007) (Mills, J., concurring in part), quoting Restatement (Second) of Torts § 392 comment a (1965) ("Anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."). If the plaintiff could establish that Kameras gave her the advice that she claimed he gave and that her reliance on that advice was misplaced (a distinctly separate question), Allan Insurance surely could not avoid liability by claiming that Kameras was under no duty to give the advice in the first place. As the plaintiff cannot demonstrate, however, that Kameras's advice (if given) was wrong (see text, infra), the defendant is entitled to summary judgment regardless of whether he gave the advice that the plaintiff ascribes to him.
                                                            -13-
preclude coverage under the plaintiff's Policy. To the extent, therefore, that Kameras gave the advice that the plaintiff ascribes to him, it was ultimately correct, and the plaintiff cannot recover damages.
            The interpretation of an unambiguous insurance policy is a question of law. See Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012) ("The proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury."); Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 440 (2006) ("Where the language of a contract is clear and unambiguous, summary judgment is an appropriate vehicle for judicial interpretation because the court may interpret the meaning of the contract as a matter of law without resort to extrinsic evidence or determinations of fact.") Courts interpreting insurance policies "begin with the plain language of the policy." Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 480 Mass. 480, 485 (2018), quoting Mount Vernon Fire Ins. Co. v. Visionaid, Inc., 477 Mass. 343, 348 (2017). The court interprets "the words 'in light of their plain meaning . . . [and] considering 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered' . . . ." Mount Vernon Fire Ins. Co., 477 Mass. at 348, quoting Golchin v. Liberty Mut. Ins. Co., 466 Mass. 156, 159 (2013). If, however, "the policy language is ambiguous, 'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.'" Surabian Realty Co., Inc. v. NGM Ins. Co., 462 Mass. 715 (2012), quoting Boazova, 462 Mass. at 350-351. This rule is applied with particular strictness to exclusionary clauses. See Boazova, 462 Mass. at 351. "An ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." Surabian Realty Co., Inc., 462 Mass. at 718, quoting Boazova, 462 Mass. at 351.
                                                            -14-
            As an initial matter, there is nothing in the plain language of the Policy that appears ambiguous on its face. The plaintiff, in her reply brief, submits a number of dictionary definitions for the word entrust. Two of these definitions seem most relevant to the Policy's use of the word. The plaintiff cites Webster's Dictionary definitions of entrust as:
1. To confer a trust upon: deliver something to (another) in trust [entrusted him with responsibility for completing the work] [entrusted him with money]. 2. To commit or surrender to another with a certain confidence regarding his care, use, or disposal of [entrusted money to him].
These definitions capture the element of entrustment inherent in a lessor's entrustment of a property to a lessee — with the expectation that the lessee will use it with care.
            In the face of an apparently unambiguous usage of the word entrust in the Policy, the plaintiff maintains that an ordinary, reasonable insured would not contemplate that the exclusion would continue to apply even after the insured had sought an order to evict the tenant from the premises and secured an agreement from the insured to leave. Massachusetts courts do not appear to have addressed whether the entrustment exclusion applies even though the loss occurred after the plaintiff terminated the lease. Those jurisdictions that have addressed the issue have held consistently that entrustment exclusions "apply even after the temporal termination of an entrustment, provided that there is a causal connection between the act of entrustment and the resulting loss." Easy Corner, Inc. v. State Nat. Ins. Co., Inc., 56 F. Supp. 3d 699, 707 (E.D. Pennsylvania 2014) (applying exclusion to damage caused by disgruntled, evicted tenant because tenant's prior lawful access to building gave him easy access to building to cause damage). "When encountering entrustment exclusions with language similar to that in this instant matter, the courts have been uniform in holding that they apply to bar recovery from thefts committed by the person entrusted, even when the dishonest or criminal acts occur after the period of entrustment has terminated, provided that there is some sort of nexus or causal connection
                                                            -15-
between the entrustment and the later theft." 2900 Rock Quarry, LLC v. Westfield Ins. Co., 2017 WL 2616961 at *6 (E.D. North Carolina 2017).[14]
            Courts that have construed the entrustment exclusion in this manner have relied on the purpose of the exclusion, which is "to exclude from the risk undertaken by the insurer those losses that arise from the 'misplaced confidence' of the insured in those to whom it entrusts its property." Easy Corner, 56 F. Supp. 3d at 705, quoting Bainbridge, Inc. v. Calfarm Ins. Co., 2004 WL 2650892, at *6 (Cal. App. Ct. Nov. 22, 20014). As the 2900 Rock Quarry court explained:
Underlying these holdings is the principle that an insurer can only be responsible for that which it has agreed to insure, and that the agreed upon purpose of entrustment exclusions is to exclude coverage for 'misplaced confidence' by an insured. See Van Sumner, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 329 S.E. 2d 701, 704 (1985) . . . . Entrustment Exclusions would be rendered meaningless if one could escape their effect simply by arguing that one lost trust in the thief before he committed thefts against your property. The point is to exclude coverage for misplaced trust . . . ."
---------------------------
[14] See also Pacific Marine Center, Inc. v. Philadelphia Indem. Ins. Co., 248 F. Supp. 3d 984, 997 (E.D.Cal. 2017) (entrustment exclusion applies "even if the loss occurs after the authorization or entrustment has terminated, so long as there is a causal connection between the act of entrustment and the resulting loss"); Plaza 61 v. North River Ins. Co., 446 F. Supp. 1168, 1171 (M.D.Penn. 1978), aff d, 588 F.2d 822 (3rd Cir. 1978) (entrustment exclusion applied even though insured's property was taken by general contractor from job site after contractor had been terminated and ordered to vacate site); Winking Group, LLC v. Aspen Am. Ins. Co., 2018 WL 485974, at *3 (S.D.N.Y. Jan. 18, 2018) (entrustment exclusion applied to vandalism by evicted tenant because "vandalism was causally related to Plaintiff's initial entrustment of the premises"); F.D. Stella Prods. Co. v. General Star Indem. Co., 2005 WL 3436388, at *7 (N.D.Ill. Dec. 12, 2005) (entrustment exclusion "applies even if the dishonest or criminal act occurs after the entrustment has terminated"); Bainbridge, Inc. v. Calfarm Ins. Co., 2004 WL 2650892, at *6 (Cal. App. Ct. Nov. 22, 2004) ("Nothing in the language of the entrustment exclusion requires that the wrongful act and the entrustment of the property be contemporaneous. . . . We construe this language to require nothing more than a causal connection between the act of entrustment and the resulting loss, even if the loss occurs after the entrustment has terminated."); Ilgenfritz v. Canopius U.S. Ins., 243 So.3d 1109, 1114 (La. Ct. App. 2017) (entrustment exclusion applied to business partner's theft of plaintiff's restaurant equipment, despite that locks to restaurant building were changed, because loss resulted from acts of someone to whom custody of property was initially entrusted).
                                                            -16-
2900 Rock Quarry, LLC, 2017 WL 2616961, at *6. Put another way, for the same reasons that insurers regularly exclude coverage for intentional conduct by their insureds, they exclude coverage for intentional conduct by those to whom their insureds turn over the insured property.
            There is no reason to believe that an ordinary, reasonable insured in the plaintiffs position would think that the Policy covered damage caused deliberately by a tenant — or former tenant — on the tenant's way out. As a result, the plaintiff has not identified any way in which the entrustment exclusion could be viewed as ambiguous. As the plaintiff has consistently maintained that the damage to the property was deliberately caused by individuals associated with Red Lulu as they left the premises, the entrustment exclusion precludes coverage. If, in fact, Komeras advised the plaintiff not to file a claim with Public Service, he ultimately was right because the Policy would not have covered the damage.
II. Third-Party Defendant Tomlinson's Motion for Summary Judgment
            As the Allan Insurance Agency is not liable to the plaintiff in tort, it cannot make out an action for contribution against Attorney Tomlinson. The right to contribution is "derivative of the joint liability in tort of the third party-plaintiff and the third party defendant." Dighton v. Federal Pacific Elec. Co., 399 Mass. 687, 691 (1987), citing O'Mara v. H.P. Hood & Sons, 359 Mass. 235, 238 (1971). "Without liability in tort, there is no right to contribution." Id. As the plaintiff cannot sustain a cause of action against the Allan Insurance Agency, therefore, Tomlinson has no joint liability in tort with Allan, and Allan cannot maintain its third-party action for contribution against Tomlinson.[15]
---------------------------
[15] Attorney Tomlinson also argues that the contribution claim must fail because he no longer represented Strega when Kameras advised Cappuccio about which claim(s) to file. As this defense involves disputed issues of fact as to the extent of Attorney Tomlinson's representation of Strega in connection with the termination of the Red Lulu lease, Attorney Tomlinson would not be entitled to judgment as a matter of law based on that defense.
                                                            -17-
III. Defendant Public Service Insurance Company's Motion for Summary Judgment
            The plaintiff claims that various aspects of Public Service's handling of her claim, after she initially reported the loss to Kameras in November 2013, amount to unfair or deceptive settlement acts or practices. The plaintiff relies on several acts and omissions by Public Service to support her claim. At the heart of the plaintiff's suit, however, are the roughly forty-one months that elapsed between Cappuccio's notification to Kameras in November 2013 and her filing of the lawsuit in May 2016. The plaintiff maintains that Public Service failed to resolve her claim for roughly three and one half years, a contention that, if established, would almost certainly constitute a violation of both G. L. c. 176D, § 3(9)(d)-(f) and, therefore, G.L. c. 93A.
            Public Services responds, however, by arguing that Cappuccio's notification of Kameras about the loss in November 2013 was not a notification to Public Service, as required under the insurance contract. Public Service contends that it was not notified of the loss until slightly more than two years later — in November 2015. Public Service notes that it issued a reservation-of-rights letter less than a month after receiving that notice. Conceding that it did not send a final declination letter to the plaintiff before it filed suit in May 2016, Public Service maintains that its delay in doing so could not have harmed the plaintiff as the plaintiff failed to notify Public Service within the contractually required two-year period.
            Public Service's argument for summary judgment essentially amounts to a claim that it cannot be held liable under G.L. c. 93A for unfair settlement practices (in violation of G.L. c. 176D, §3(9)(d)-(0) because it has no liability to the plaintiff under the Policy that it issued to Strega Realty. Public Service bases its contention on the plaintiff's delay of more than two years in reporting the loss, which exceeded the permissible period for notice allowed under the Policy
                                                            -18-
and thereby violated one of its key terms.[16] The plaintiff responds that she notified Kameras of the loss within days of its occurrence. The plaintiff contends that notice to the insurance broker, Kameras, satisfies the Policy's notice condition. Because the plaintiff's notice to Kameras did not satisfy the Policy's notice requirements and because, therefore, the plaintiff did not notify Public Service of the loss within two years — as required by both the Policy and the applicable statute of limitation (G.L. c. 175, §99, twelfth paragraph) — the plaintiff's contention fails, and summary judgment for Public Service is appropriate.
            There is no dispute that the damage to the property occurred before November 4, 2013. There is likewise no dispute that the plaintiff first reported the loss to Public Service — as distinguished from reporting to Kameras (see discussion below) — on November 6, 2015, more than two years after the damage occurred. Thus, unless the plaintiff's notice to Kameras on November 4, 2013, constituted notice to Public Service, the plaintiff is not entitled to recover under the Policy.
            The plaintiff contends that her report of the damage to Kameras on November 4, 2013, satisfies the requirement of prompt notice to Public Service. The plaintiff maintains that Kameras was a "duly authorized agent" of Public Service, such that her notice to him days after the damage occurred also put Public Service on notice of the loss. (Compl. at p. 2, para. 10.) There is, however, no evidence in the record that Allan Insurance and/or Kameras were agents of Public Service and, therefore, the plaintiff's notice of the loss to Kameras constituted notice to Public Service. The plaintiff notes that Allan Insurance Agency's Brokerage Agreement with Public Service required that, in the event that the broker learned of a loss, the broker was
---------------------------
[16] The Policy requires the insured to give the insurance company "prompt notice" of any loss. CP 00 10 06 95, at p. 6. The Policy further specifies that the insurance company will not cover claims if the notice of loss was not given to the company within two years of the loss. (Policy, Form CP 01 09 10 00, at p. 6.)
                                                            -19-
required to "immediately report all claims and losses and turn over all legal process involving coverages placed with Company to the nearest Company Claims Office or Authorized Representative." (Dep. of Jerrold Kameras, July 22, 2019 at p. 34.) The Brokerage Agreement, however, was an agreement between Allan Insurance and Public Service. The plaintiff was not a party to it,[17] and, indeed, there is no evidence that she was even aware of it before initiating this litigation.
            The further difficulty with the plaintiff's position is that the Policy is clear that, in the event of loss, prompt notice must be provided to "us." (Policy, Form CP 00 10 06 95, at p. 6.) Throughout the Policy, there is a prominently positioned explanation that, "[t]he words 'we,"us' and 'our' [in the policy] refer to the company providing the insurance." (emphasis supplied) (Policy, Form GC 00 01 10 01, at p. 1, et seriatim). There can be no dispute that the plaintiff, an experienced businessperson, understood the difference between notifying Kameras and notifying Public Service. Two facts make this conclusion inevitable. First, in 2013, after a discussion with Kameras, the plaintiff filed a claim with Selective Insurance (her insured's carrier) and not with Public Service. Then, in November 2015, she filed a claim directly with Public Service.
            The plaintiff maintains that the question whether Kameras and/or Allan Insurance was (were) a "duly authorized agent[s]" of Public Service is a disputed issue of fact. The difficulty with this position, however, is that the undisputed facts establish that they were not. The plaintiff seeks to create a disputed issue of fact by denying that Allan Insurance was an insurance broker. (See Joint Statement of Undisputed Material Facts Pursuant to [Superior Court] Rule 9A(b)(5) and Pl.'s Responses at p. 3, para. 11R ("Denied that Mr. Kameras is a broker.") There
---------------------------
[17] Indeed, in its Memorandum of Law in Opposition to Motion of Defendant, Public Service Insurance Company, for Summary Judgment, the plaintiff argues that Kameras had "a contractual duty . . . with Public Service," (emphasis supplied) to report the loss to Public Service. (Pl.'s Mem. at p. 3).
                                                            -20-
are two flaws in this argument. First, a simple assertion, without factual support, does not create a disputed material issue of fact. Gerante v. 202 Sports Complex, 95 Mass. App. Ct. 455, 461 (2019), quoting Polaroid Corp., v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696 (1993) (ellipses in original) ("bare assertions . . . are not enough to withstand a well-pleaded motion for summary judgment"). Second, the plaintiff relies on Allan Insurance's "brokerage agreement" with Public Service for the proposition that Kameras and/or Allan Insurance had an obligation to report the loss to Public Service. Ultimately, the plaintiff has adduced no evidence to suggest that Kameras and/or Allan Insurance was a "duly authorized agent" of Public Service such that her report of the loss to Kameras constituted the contractually required notice to Public Service.
            The undisputed facts thus establish that Public Service had no contractual duty to cover the plaintiff's losses. In these circumstances, it certainly cannot be said that Public Service's liability under the Policy ever became "reasonably clear," as required to establish a violation of G. L. c. 176D. Indeed, what had become clear was that the plaintiff was not entitled to recover under the Policy.
            There is an additional ground to allow Public Service's Motion for Summary Judgment. As discussed above (see Section I, supra), the entrustment exclusion in the insurance policy meant that Red Lulu's vandalism of the property was not covered under the Policy. As the plaintiff was not entitled to recover under the Policy for intentional damage to the property by her departing tenant, Public Service had no liability under the Policy, and liability therefore could not have become clear. See Van Dyke v. St. Paul Fire and Marine Ins. Co., 388 Mass. 671, 678 (summary judgment for insurer appropriate even if insurer violated G. L. c. 176D and 93A because insured had no valid claim and, therefore, insured's violation of the statute could not have harmed them).
                                                            -21-
CONCLUSION
            More than two years after the loss, the plaintiff sought to recover for damage that her disgruntled tenants deliberately committed as they vacated the insured premises. This type of damage, however, was not covered under the Policy, and there can be no claim therefore that her insurer acted unfairly in failing to settle the claim. Even if the plaintiff proved that her insurance broker advised her not to claim under the Policy, therefore, she is not entitled to judgment because the advice was correct. Finally, because she is not entitled to judgment against her broker, her former attorney has no liability in contribution to the broker.
ORDER
            For the foregoing reasons, the motions for summary judgment brought by defendants Public Service Insurance Company and the Allan Insurance Agency, Inc. and the motion for summary judgment brought by third-party defendant Raymond Tomlinson, Esquire, are ALLOWED, and the case is DISMISSED WITH PREJUDICE.
/s/David A. Deakin Associate Justice
February 3, 2020